J. Irwin Shapiro, J.
Plaintiff Cross Armored Carrier Corp. is engaged in the business of transporting, by armored cars, money belonging to persons and corporations with whom it has contracts for such service.
*918 It brings this action on two policies to recover a loss of $77,648.58. On the first printed page of each of the two Lloyd’s policies the defendants agree to indemnify the plaintiff, as the assured, in accordance with specific percentages (totalling 100%) for the loss covered thereby. The remainder of the policies is typewritten. Attached to the first typewritten page appears a rider which reads as follows:
ALL RISKS INSURANCE
* * *
To cover the Liability of the Assured, whether as common or private carriers, and whether assumed by contract or otherwise, and direct coverage with regard to the property of the Assured, used on behalf of the Assured’s Customers, for any loss of or damage to property as described above, from any cause whatsoever including any act or omission of any employee or officer of the Assured.
LIMITS
(A) $5,000,000 with respect to any one loss on the property at any one time while in transit. [Emphasis supplied.]
(B) $10,000,000 with respect to any one loss on the property while scád property is temporarily lodged ivithin the premises of the Assured. [Emphasis supplied.]
The provisions of the body of the policy are, inter alia, as follows:
1. In consideration of a premium which the Assured Cross Armored Carrier Corporation, has agreed to pay, Underwriters hereby agree to cover the liability of the Assured subject to the following clauses:
2. To cover Monies, Documents and other Armored Car Commodities, hereinafter called property.
3. While in the care or custody of the Assured.
4. It is the intent of this Policy to cover the Liability of the Assured, whether as common or private carriers, and whether assumed by contract or otherwise, and direct coverage with regard to the property of the Assured, used on behalf of the Assured’s customers, for any loss of or damage to property as described in paragraph 2, from any cause whatsoever including any act or omission of any employee or officer of the Assured.
5. (This provision lists specific exclusions not here pertinent.)
6. The Underwriters Liability to the assured under this Policy is limited to:
(a) $5,000,000.00 with respect to any one loss on the property, at any one time while in transit.
(b) $10,000,000.00 with respect to any one loss on the property while said property is temporarily lodged within the premises of the Assured.
Paragraphs 6 (a) and 6 (b) above set forth are identical with and repetitions of paragraphs A and B under the heading “Limits” contained on the first page of the policies.
The loss for which plaintiff seeks recovery in the sum of $77,648.58 arose out of the following circumstances: Plaintiff had service contracts, either directly or by assignment and assumption, with concessionaires of the Billy Blake Discount Department Store, a shopping center in Sayville, Suffolk *919 County. In furtherance of the agreements, plaintiff took over from the Eastern Armored Car Corporation and thereafter maintained a safe in the Billy Blake premises wherein the concessionaires at the end of a business day would place bags containing the day’s receipts into a hopper on top of the safe and they would then automatically fall into the safe. On the following day the safe would be opened by an employee of plaintiff in the presence of a representative of Billy Blake for the purpose of transporting the moneys to their destination — the depository for which they were intended. The safe could not normally be opened except by plaintiff. On December 24, 1962 it was discovered that the safe had been broken into and moneys deposited therein by concessionaires totaling $77,648.58 had been stolen.
The proof also established that plaintiff procured a Lloyd’s policy of burglary insurance covering the contents of the safe located in the Billy Blake premises which was issued by a group of carriers some of whom are the same as some of the defendants. This coverage was effectuated at a time when several contracts were assigned by Eastern Armored Car Corporation to plaintiff and the plaintiff took over the maintenance of this particular safe. This was accomplished by the attachment of a rider to an outstanding policy which afforded plaintiff burglary insurance in specific but varying amounts applicable to individual safes maintained by plaintiff in various department stores, shopping centers and certain other enterprises. The coverage afforded by the rider added with respect to this particular safe was $50,000. After the loss the sum of $50,000 was paid to plaintiff under the burglary insurance policy and it thereupon executed a release and receipt whereby it agreed to pay to those insurers any recovery “ obtained from any other insurance carrier [by plaintiff] in the proportion that Fifty Thousand ($50,000) Dollars bears to * * * $77,709.58 * * * [but not] any recovery exceeding the amount of Fifty Thousand ($50,000) Dollars ”. The receipt and release further provided that if plaintiff recover from any such other insurance carrier on the basis that same was primary insurance or contributory insurance, then plaintiff would refund such portion of the $50,000 as represents the amounts that the insurers would not have been liable for.
Defendants upon the trial did not contend that plaintiff was not liable for the loss to the concessionaires by reason of its contracts with them and therefore by stipulation the issues placed before the court for decision were limited to the following:
*920 (1) Was coverage afforded by the policies for the loss sustained, and if it was, then
(2) The amount which plaintiff was entitled to recover in view of the provisions in the policies in suit (par. 16); that “ no loss shall be paid hereunder if the assured has collected the same from others ’ ’ and paragraph 15 which grants the insurers plaintiff’s rights of subrogation.
The basic issue therefore is the construction of the policies, i.e., is the loss sustained by the plaintiff covered by the defendants’ policies? Defendants urge that the policies in suit place liability upon them only if the loss occurred in transit or in plaintiff’s premises and that since neither situation obtained here, they are not liable under the terms of the policies. Clearly the moneys here were not in transit; they were “ stagnant * * * they had never started but were awaiting the beginning of their transit toward their destination ” (San-Nap Pak Mfg. Co. v. Firemen’s Ins. Co. (47 N. Y. S. 2d 542, 545, affd. 268 App. Div. 905, mot. for lv. to app. den. 268 App. Div. 979). Since plaintiff does not contend that the loss occurred on its premises, and I find as a matter of law that the moneys were not in transit at the time of the loss, plaintiff to succeed is relegated to the position in fact taken by it in its brief that there is coverage for this loss since the moneys were in its “ care or custody ” at the time of the loss.
Plaintiff argues that the limitations of liability of $5,000,000 for loss in transit and $10,000,000 for loss occurring on plaintiff’s premises (par. 6 of policies) are merely limitations of amounts and do not constitute an exclusion of the loss of the type here in issue and that as a matter of law the policies are clear and unambiguous. Clearly, if plaintiff’s contention that there is no ambiguity were valid there would be nothing for the court to construe since it is hornbook law that where the terms of a contract, insurance or otherwise, are unambiguous it cannot be enlarged or diminished by judicial construction for a court may not make a new contract for the parties where they themselves have employed clear and unambiguous terminology (29 N. Y. Jur., Insurance, § 597). However, in order to determine whether a contract of insurance is unambiguous ‘ ‘ All words, parts and provisions of a policy must be construed together as one entire contract and all the terms and conditions of each part must be read and interpreted in the light of all the other parts. It is not permissible to lift one sentence from a policy and try to attach a particular meaning to that sentence standing alone”. (29 N. Y. Jur., Insurance, § 602; see, also, *921 13 Appleman, Insurance Law and Practice, § 7383). Construction must be given to all policy provisions and meaning must bo given to every sentence, clause and word of the contract of insurance (29 N. Y. Jur., Insurance, § 603).
Paragraph 3 and paragraph 6 both appear on the rider attached to the first page of the policy. Beading them as if they were incorporated in one paragraph makes it obvious that the meaning to be ascribed to them is less than clear. From the two clashing paragraphs a patent ambiguity in meaning and intent is evident. It follows therefore that the court is called upon to construe the meaning and scope of the policy. A cardinal principle in discharging that function is the ascertainment of the basic intention of the parties (13 Appleman, Insurance Law and Practice, § 7385).
An appropriate standard for construction of contracts of insurance was aptly stated in McGrail v. Equitable Life Assur. Soc. (292 N. Y. 419, 424-425) where the court said: “When the terms used are clear and unambiguous, they are generally to be taken and understood in their plain, ordinary and proper sense (Johnson v. Travelers Insurance Co., 269 N. Y. 401, 408). But resort to a literal construction may not be had where the result would be to thwart the obvious and clearly expressed purpose which the parties intended to accomplish or where such a construction would lead to an obvious absurdity (Silverstein v. Metropolitan Life Ins. Co., 254 N. Y. 81) or place one party at the mercy of another (Russell et al v. Allerton, 108 N. Y. 288, 292). Such meaning must be given to the terms used as would be ascribed to them by the average man in applying for insurance and reading the language of the policy at the time it was written (Lewis v. Ocean Acc. & G. Corp., 224 N. Y. 18, 21; Silverstein v. Metropolitan Life Ins. Co., supra). Consistently followed in this State has been the rule that the policy must be construed reasonably and that it must be given a practical construction, not thereby with the result that there is a revision of the policy or an increase of the risk and thus an extension of the resulting liability, but for the purpose of determining what the parties must reasonably have intended by its terms when the policy was written by defendant and accepted by the plaintiff (Garms v. Travelers Insurance Co., 242 App. Div. 230; Williams v. John Hancock Mut. Life Ins. Co., 245 App. Div. 585; Goldstein v. Connecticut General Life Ins. Co., 273 N. Y. 578; Mintz v. Equitable Life Assurance Society, 276 N. Y. 546; Hartol Products Corp. v. Prudential Insurance Co., 290 N. Y. 44).”
*922 . The construction urged by plaintiff would necessarily mean that there would be no coiling on defendants’ liability for a burglary loss at its customers’ premises since the only monetary limitations in the policies are $5,000,000 for property ‘ ‘ while in transit ” and $10,000,000 for a loss while property ££ is temporarily lodged within the premises of the Assured.” All the gold at Fort Knox would not cover the outer limits of defendants’ liability if plaintiff’s construction of the policy were accepted. A construction which places one party to a contract at the mercy of the other is neither a practical nor a reasonable one and should be avoided if at all consistent with the meanings discernible from the language used by the parties. In addition, such an interpretation of the instant policies would evince an intent on the part of the insurers to limit their “ all risk ” loss from a burglary to $10,000,000 while property was ££ temporarily lodged within the premises of the Assured ” but to place no monetary ceiling on their liability while the property was in the premises of others is surely an unnatural and unreasonable corollary. ££ The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result. Resort may properly be had to the doctrine of probability and reasonableness. It is practical rather than a literal or technical construction which is deemed desirable.” (13 Appleman, Insurance Law and Practice, § 7386 ; see, also, 29 N. Y. Jur., Insurance, § 605.)
Using these principles as a guideline in an effort to ascertain the ££ intention, expressed or fairly to be inferred ” that ££ the ordinary business man ” — “ when making an ordinary business contract” would draw (Bird v. St. Paul Fire & Marine Ins. Co., 224 N. Y. 47, 51) I conclude that a fair reading of the insurance contract as a whole indicates that it was the intention of the parties to afford the plaintiff indemnity for loss arising out of ££ all risks ” from ££ any cause whatsoever ” while the moneys were “ in transit ” or “ temporarily lodged in the premises ” of the plaintiff. It was not in the contemplation of the parties that coverage was to extend to moneys in plaintiff’s constructive rather than actual custody and lodged at premises other than its own.
This conclusion is buttressed by the application of yet another canon of construction, i.e., that where the meaning of a contract is ambiguous and the parties have by their acts and conduct placed their own meaning on its doubtful terms, the *923 court should and usually will adopt that construction (13 Appleman, Insurance Law and Practice, § 7385; 29 N. Y. Jur., Insurance, § 609). The rule was concisely expressed in Nicoll v. Sands (131 N. Y. 19, 24) where the court said: “ The practical construction put upon a contract by the parties to it, is sometimes almost conclusive as to its meaning.” (See, also, Green v. Travelers Ins. Co., 286 N. Y. 358; Thompson-Starrett Co. v. American Mut. Liab. Co., 276 N. Y. 266, 272.)
Plaintiff by procuring separate burglary insurance coverage from some of these same defendants on safes maintained by it in the premises of its customers clearly indicated that it recognized that it was not intended that such a risk was covered by the policies in suit. Why otherwise would plaintiffs procure and pay for additional coverage in the limited amount of $50,000 if such coverage were already afforded by a policy under which they were insured in an unlimited amountf Clearly, plaintiff by its conduct “ at the inception of the policies ” (Theatre Guild Prods, v. Insurance Corp. of Ireland, 25 A D 2d 109) thus negatived the contention now advanced that the subject policies were obtained to cover the loss incurred under the circumstances presently existing.
Plaintiff further urges that assuming, though not conceding, that the terms of the policies are ambiguous the rule of liberal construction of policies in favor of assureds requires the court to find that the loss here was covered by the policy. While the rule adverted to is established doctrine of general application it has its limitations. The court in construing a policy in favor of the assured may not under the guise of liberal construction make a new contract for the parties containing provisions upon which they had not agreed or impose a risk not contemplated by them (13 Appleman, Insurance Law and Practice, § 7402). The “ all risks ” with respect to the loss of the moneys envisaged by the parties was to attach only while in transit or on plaintiff’s premises and was not intended to apply to moneys in a safe or safes on the premises of others.
The cases cited by plaintiff with respect to the doctrine of strict construction against the insurer (Morgan v. Greater N. Y. Taxpayers Mut. Ins. Assn., 305 N. Y. 243; Weinberg & Holman v. Providence Washington Ins. Co., 254 N. Y. 387; Wilson Sullivan Co. v. International Paper Makers Realty Corp., 307 N. Y. 20) are not decisive. They dealt with exclusions which u are particularly deserving of strict construction so as not to cut down the coverage which the insured believed he was purchasing ’ ’ (13 Appleman, Insurance Law and Practice, § 7405). In the *924 case at bar we are not confronted with the construction of an exclusion but with the risks assumed under the contract. I find that the policies were not intended to include a loss under the circumstances set forth herein.
Accordingly judgment is directed for the defendants.