HARTFORD ACCIDENT & INDEMNITY
COMPANY *v.* ARNOLD O. PATE AND VELMA
INEZ PATE

5-6237                                   493 S.W. 2d 118

Opinion delivered April 23, 1973

*Smith, Williams, Friday, Eldredge & Clark,* by: *William H. Sutton* and *Frederick S. Ursery,* for appellant.

*Cockrill, Laser, McGehee, Sharp & Boswell,* for appellees.

CARLETON HARRIS, Chief Justice. A standard automobile liability policy was issued by the Hartford Accident &

Indemnity Company, appellant herein, to F. L. Williams, Jr. on a 1969 Buick owned by him. Williams lived in De-Witt, and his daughter, Debra K. Williams, at the time of the events hereafter stated, was living with her sister and brother-in-law in North Little Rock. The Buick was being operated by Debra in the latter city with the permission of her father. In April, 1969, it became necessary for the Buick to be placed in a shop in North Little Rock for repairs. While this automobile was being repaired, Debra borrowed her brother-in-law's 1967 Chevrolet and while driving same, was involved in an accident with appellees, Arnold O. and Velma Inez Pate. Suit was instituted by the Pates against Debra in the White County Circuit Court. Appellant denied coverage and refused to provide a defense and appellees obtained judgment against her in the amount of $7,061.47. The judgment not being satisfied[1], the Pates, pursuant to the provisions of Ark. Stat. § 66-4001 (Repl. 1966), instituted suit directly against Hartford. The company contended that its coverage did not extend to Debra K. Williams since she was not a member of the named insured's household and since she was not driving the vehicle described in her father's policy. Hartford moved for a summary judgment stating:

> "The Hartford Accident & Indemnity Company automobile liability policy, attached as Exhibit B to the Stipulation of Facts filed herein, provides in Section IV (a) (3) for a temporary substitute automobile only if used by the 'named insured or his spouse if a resident of the same household.' "

A motion was also filed by appellees for summary judgment and this motion was granted by the court. Judgment was accordingly entered for Mrs. Pate in the amount of $6,433.85, plus 6% interest from April 2, 1970, 12% penalty and $1,500.00 as a reasonable attorney's fee. Arnold O. Pate was given judgment in the amount of $627.62, plus 6% interest from April 2, 1970, 12% penalty and

---

[1]The Pates had received payment from their own insurer, State Farm Mutual Automobile Insurance Company, in the amount of $4,874.62. In their response to a Motion to Dismiss, they stated, "However, plaintiffs state that since their judgment is in excess of this amount that they are parties of interest in this lawsuit and it would be improper for State Farm Mutual Automobile Insurance Company to appear herein as a party."

an attorney's fee of $1,500.00. From the judgment so entered, Hartford brings this appeal. For reversal, appellant relies solely upon one point, viz., the court erred in interpreting the policy issued to Williams as providing coverage to the daughter although she was not a member of his household and was not driving the automobile described in the policy.

The principal issue in this litigation is whether Debra had the consent of her father or mother to drive the 1967 Chevrolet. That she had the permission of her father to drive the Buick is not disputed, nor is it disputed that the Buick had been placed in a garage for repairs. The pertinent provision relative to who constitutes the insured is found in Section III of the policy and reads as follows:

> "With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."

But, says appellant, Debra did not obtain the permission of either parent before driving the Chevrolet and this fact, it is argued, precludes coverage. The case of *Grundeen* v. *United States Fidelity & Guaranty Company*, 238 F. 2d 750 (8th Cir. 1956) is cited, but we do not agree that that case is applicable. Grundeen was engaged in the business of selling musical and band instruments and maintained eight motor vehicles, all covered by liability insurance, for use in his business. A salesman named McFall had made an appointment to meet with a band director of a public school about one hundred and twenty-five miles from Grundeen's store. McFall drove his own car to the store, picked up some instruments, drove to the Grundeen warehouse and transferred the instruments to one of the Grundeen trucks, but he could not get the truck started. McFall then transferred the band instruments from the truck back to his private car and started on his

trip, having an accident. The court held that he did not come within the definition of insured because he did not have Grundeen's permission, but it must be remembered that Grundeen had made available a fleet of company cars and under those circumstances, it could hardly be said that there was implied consent for McFall to use his personal car.

Appellant also cites the case of *Davidson* v. *Fireman's Fund Indemnity Company*, 165 NYS 2d 598. There, substantially the same definition of insured was given in the policy except that the provision only referred to permission being given by the insured rather than the insured and his spouse, a member of the household. The court recited the facts as follows:

> "On the evening of August 7, 1955 the plaintiff Dennis F. Davidson was using the car of his father, Dennis J. Davidson, the insured. During that evening the father's car became inoperable because of a heavy rain and the son, without permission of his father (the insured) or the owner of the substituted car, 'borrowed' the car of a friend who had left the ignition key in the car. An accident thereafter ensued while he was driving the 'borrowed' car. Since there was consent of neither the policyholder *nor the owner of the 'borrowed' car* [our emphasis], it may not be considered as a substitute under the terms of the policy. To hold otherwise would be to extend defendant's liability beyond a reasonable interpretation of the intent of the policy."

Of course, it is noticeable at once that there is a distinct factual difference in the cited case and the case presently before us, in that young Davidson did not have the consent, express or implied, of either his father or the owner of the substitute car. Of course, the father did not consent for his son to simply take someone else's automobile, and the owner, not even knowing that the car was taken, could not have consented. We think that the phrase which we have italicized also has quite a bit of significance, for it clearly implies that the court would have held differently had Davidson obtained the consent of the owner of the substitute vehicle.

Among other cases, appellee cites the case of *Hemphill* v. *Home Insurance Company* (Ga.), 174 S.E. 2d 251, in which the court held that where a substitute automobile was being used at the time of the collision for a purpose which would have been served by the originally insured automobile, except for its withdrawal from normal use because of repair, the substitute was being used for a permitted purpose and hence with permission of the owner; accordingly, there was coverage.

In *Nationwide Mutual Insurance Company, et al* v. *Fireman's Fund Insurance Company, et al,* 182 S.E. 2d 571, a 1965 Oldsmobile was purchased for a minor son, but because of his minority, the title was taken in the father's name. The minor drove the automobile at his pleasure and as his own, and was not restricted in his use of it in any way. Some months after the purchase, the paint on the car cracked and peeled and without consulting his father, the minor took the car to the business firm from where it had been purchased (Tux Bowers) for repainting. The car was left at a paint shop and the seller furnished the minor another car, a 1961 Oldsmobile, to use while the purchased automobile was being repainted. The father was not a party to this arrangement and knew nothing about the conditions under which his son obtained the substitute automobile. Subsequently, the second car was wrecked in an accident. The Supreme Court of North Carolina, in holding that there was coverage, stated:

"The next question is whether Fireman's policy covered the 1961 Oldsmobile as a 'temporary substitute automobile' for the 1965 Oldsmobile. Such an automobile is (1) one not owned by the insured of his spouse and (2) one which is being temporarily used for an insured automobile while it is 'withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.' It is undisputed that neither Carson nor his wife owned the 1961 Oldsmobile which Terry was driving at the time of the accident. Tux admits its ownership of that vehicle.

"It is equally clear that while the 1965 Oldsmobile remained in the Williams Paint and Body Shop for the removal and replacement of outside paint which

had proved defective, the insured vehicle had been withdrawn from normal use 'because of its *** repair ***.' A substitution provision in a policy of automobile liability insurance 'is for the insured's benefit and is to be construed liberally in favor of the insured if any construction is necessary.' "

The court held that, though the father did not give actual consent to his son's obtaining the substitute automobile, there was implied consent.

"When Bowers delivered the 1961 Oldsmobile to Terry as a temporary substitute for the 1965 Oldsmobile he was merely furthering Carson's previously permitted purpose."

In line with these cases, there is nothing in the record to reflect that Debra's use of the Buick automobile had been in any manner restricted; she was regularly using the car at the time it became necessary that it be repaired. Likewise, Debra was driving the borrowed car with the consent of the owner. The trial court found that she had been regularly operating the 1969 Buick with the knowledge and consent of her parents and to paraphrase the language of the North Carolina Supreme Court in *Nationwide Mutual Insurance Company, et al* v. *Fireman's Fund Insurance Company, et al, supra,* when the brother-in-law loaned the 1967 Chevrolet as a temporary substitute for the 1969 Buick, he was merely furthering her father's previously permitted purpose. We hold there was implied consent for the use of this vehicle.

It is also argued that while the described vehicle was in the shop for repairs, this does not mean that coverage would be extended to everyone who had permission to use the described vehicle; that if the trial court's interpretation was correct, then the Hartford policy might provide coverage to many automobiles simultaneously. We see no merit in this argument. As has already been pointed out, Debra was operating the car at the time the car was placed in the garage and was the one who found it necessary to obtain substitute transportation.

It is also contended that under Section V of the policy entitled "Use of Other Automobiles", liability coverage

is only provided to the named insured and his spouse (a resident of the same household) while driving any other automobile. It would appear that this section refers to the coverage which is afforded to a man or his wife when they operate vehicles not belonging to them, but not because their own automobile is inoperable; i.e., the non-owned car is not being used as a temporary substitute awaiting the repair of their own vehicle.

We do not agree that this section has any bearing on the issue whatsoever, nor does appellant cite any authority. Also, in moving for a summary judgment, appellant somewhat relied on Section IV (a) (3), there contending that a temporary substitute automobile was only covered if used by the named insured or his spouse if a resident of the same household. We do not agree that the coverage is so limited; the words "if a resident of the same household" refer only to the word "spouse" and only mean that the wife is not covered unless she is living in the same house with her husband.[2] The section that clearly controls this litigation is Section III (a) quoted near the outset of this opinion, which clearly, with IV (3), gives coverage (on a substitute car) to one who has permission to drive the insured car which is withdrawn from use because of repairs. Since we have said that there was implied consent for the daughter to operate the substituted vehicle, it follows that Debra was the insured at the time of the accident. As a matter of fact, if either Section IV or V contained any language conflicting with Section III, an ambiguity would exist, and since ambiguities are construed most strongly against the one who prepared the contract, the company still could not prevail. See *The Fidelity & Casualty Co. of New York* v. *Marion L. Crist & Associates, Inc.*, 248 Ark. 1010, 455 S.W. 2d 904.

---

[2] "IV. Automobile Defined, . . .

    (a) Automobile. Except with respect to division 2 of coverage B and except where stated to the contrary, the word 'automobile' means:

        (1) . . . . . . .

        (2) . . . . . . .

        (3) Temporary Substitute Automobile—under coverages A, division 1 of coverage B, and C, an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;"

It follows from what has been said that no error was committed in rendering the judgment against Hartford.

Appellees' attorney is awarded an additional fee of $750.00 for services rendered on this appeal.

It is so ordered.