LYDIA VANMINOS et al., Plaintiffs, v FRED W. MERKLEY et al., Defendants and Third-Party Plaintiffs-Respondents; NEW HAMPSHIRE INSURANCE COMPANY, Third-Party Defendant-Appellant.

Fourth Department, June 6, 1975

*Nixon, Hargrave, Devans & Doyle (James H. Morgenstern* of counsel), for third-party defendant-appellant.

*Thomas O'Connell* for third-party plaintiffs-respondents.

GOLDMAN, J. Third-party defendant, New Hampshire Insurance Co. (New Hampshire) appeals from a denial of its motion to dismiss the third-party complaint of Fred W. Merkley and Hazel E. Merkley (Fred, Sr. and Hazel). Appellant urges that the third-party complaint should have been dismissed "upon the ground that [its] defense is founded upon documentary evidence and that the third-party complaint fails to state a cause of action, pursuant to CPLR 3211". Special Term permitted reargument and adhered to its original denial of the motion. The principal question, among several, is a consideration of the "temporary substitute automobile" clause of respondents' insurance policy which was written by New Hampshire.

An examination before trial conducted by appellant carrier elicited the following fact situation. On November 20, 1965 one Fred M. Merkley (Fred, Jr.), son of respondents, drove his 1964 Ford automobile to his parents' farm which is located a mile from his own residence. The purpose of the trip was to assist his father, with other helpers, to load and transport cattle to another farm. Fred, Jr. usually helped his father

with the farm chores without compensation. After the cattle had been loaded, Fred, Sr. proceeded to haul the cattle in a tractor-trailer to the other farm. Fred, Jr. intended to use his mother's automobile to drive the helpers and himself to the place where they would assist Fred, Sr. unload the cattle. The mother's automobile, a 1959 Ford, which was covered by the New Hampshire liability policy, would not start, whereupon Fred, Jr. then used his own automobile, a 1964 Ford. His mother was not a passenger on this trip during which the accident occurred.

Plaintiffs (not parties to this appeal) commenced an action against Fred, Sr. and Hazel, alleging that Fred, Jr. was their employee and was performing services for them in the scope of his employment. The defendants then, by a third-party complaint, sued New Hampshire, alleging liability by reason of the automobile insurance policy it had issued which covered Hazel's automobile. New Hampshire countered with a motion to dismiss, pursuant to CPLR 3211 (subd [a], pars 1, 7). Special Term dismissed the complaint, a judgment was entered on January 16, 1968, and no appeal was taken. Three months later respondents served a second third-party complaint which contained the same allegations previously made in the first complaint and further asserted as new material that New Hampshire's policy covered the accident because at the time of the accident Fred, Jr.'s automobile was being used as a "temporary substitute automobile", as defined in subdivision 3 of section IV of the policy. The second complaint additionally alleged that at the time of the accident "the plaintiff's [Hazel] automobile was inoperable".

In response to a notice to admit, respondents admitted that: the named insured in the policy was Hazel and the covered automobile was her 1959 Ford; Fred, Jr. was not a member of, nor a resident of respondents' household; Hazel's automobile was not involved in the accident and at the time of the accident Fred, Jr. was alone driving his own automobile. The reply denied that Fred, Jr. did not request or obtain permission from Fred, Sr. or Hazel to use the 1964 Ford automobile involved in the accident on November 20, 1965.

New Hampshire moved to dismiss the second third-party complaint on the same grounds as asserted on the first motion, or in the alternative, for the direction of a separate trial of the third-party claim. Special Term on this motion and on a reargument thereof denied dismissal of the complaint and

ordered that unless the parties agree that the entire case be tried without a jury, the alternative motion for a separate trial of the third-party complaint be granted.

Appellant contends that Special Term erred in refusing to dismiss the complaint, claiming that the second third-party action is barred by *res judicata.* New Hampshire further asserts that the failure of respondents to have appealed from the dismissal of the first third-party complaint necessarily determined the rights and duties of the parties on the whole policy. We do not agree with this contention.

It is only after a final judgment on the merits that full *res judicata* effect can be given to it *(Bannon v Bannon,* 270 NY 484, 489; *Webb v Buckelew,* 82 NY 555, 560; 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par 5011.11). The first complaint was not dismissed on the merits. "A judgment dismissing a cause of action before the close of the proponent's evidence is not a dismissal on the merits unless it specifies otherwise" (CPLR 5013). (See, also, 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par 5013.01.) Special Term's dismissal of the first third-party complaint before issue was joined by service of the third-party defendant's answer did not specify that the dismissal was *on the merits.* We pointed out the finality of an "on the merits" dismissal in *Palmer v Fox* (28 AD2d 968, affd 22 NY2d 667). Furthermore, the second complaint was not merely a restatement of the first complaint. If it were, then the dismissal would be binding as the law of the case (see *Flynn v Sinclair Oil Corp.,* 20 AD2d 636, 637, affd 14 NY2d 853). The first dismissal however, for such purposes, is deemed on the merits "as to the point it decided" *(Spindell v Brooklyn Jewish Hosp.,* 35 AD2d 962, 963, affd 29 NY2d 888). Since the second complaint alleges grounds for indemnity not contained in the first complaint, dismissal of that complaint, not stated to be "on the merits", should not bar respondents from correcting the defects of the first complaint by commencing a new action within the statutory period *(Allston v Incorporated Vil. of Rockville Centre,* 25 AD2d 545, 546; cf. *Binkowski v General Elec. Co.,* 25 AD2d 577).

The issue which will ultimately be dispositive of the rights of the parties is whether the "temporary substitute automobile" clause of Hazel's insurance policy covers an automobile owned and operated by respondents' son when the complaint alleges that respondent Hazel's automobile was inoperable

and the son's automobile was being used in place of it at the time of the accident.

The following are the relevant provisions of the insurance policy:

"III. *Definition of Insured:* * * * includes any person while using the automobile * * * with the permission of [the named insured].

"IV. *Automobile Defined* * * *

"(a) Automobile. * * * the word 'automobile' means: * * *

"(3) *Temporary Substitute Automobile—* * * * an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

"V. *Use of Other Automobiles.* If the named insured * * * owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy * * * applies with respect to any other automobile, subject to the following provisions: * * *

"(d) This insuring agreement does not apply: * * *

"(3) * * * to any automobile while used in a business or occupation of such named insured or spouse except a private passenger automobile operated or occupied by such named insured, spouse, private chauffeur or domestic servant".

We can find little decisional answer to this question in New York State law but interpretation by other jurisdictions is helpful in its resolution. The purpose of the substitution clause is to provide an additional protection for the insured and should be construed liberally in his favor, if construction is necessary. "[T]he terms of a substitution provision in an automobile policy 'should be defined and given their every day "man-on-the-street" understood meaning'" *(Nationwide Mut. Ins. Co. v Fireman's Fund Ins. Co.,* 279 NC 240, 250–251; *Farley v American Auto. Ins. Co.,* 137 W Va 455, 457; 7 Am Jur 2d, Automobile Insurance, § 103). The purpose of the substitution clause is to afford continuous coverage to the insured and at the same time limit the risk to one operating automobile at a time for a single premium *(State Farm Mut. Auto. Ins. Co. v Lietz,* 122 Ga App 596; *Home Ind. Co. v Godley,* 122 Ga App 356; *Central Nat. Ins. Co. of Omaha v*

*Sisneros,* 173 F Supp 757, 760; 12 Couch, Insurance 2d, § 45:219).

If respondents can prove at trial that Hazel's car was inoperable and that Fred, Jr.'s was used in its stead, then Fred, Jr.'s 1964 Ford would come within the definition of section IV (subd [a], par [3]) of Hazel's policy. However, New Hampshire asserts that the only way Fred, Jr. can be deemed an additional insured within the policy's omnibus clause (§ III —Definition of Insured) is if he was driving the automobile with insured's permission and consent. This latter condition, New Hampshire argues, cannot be satisfied because obviously respondents did not give, nor indeed did they need to give, permission to Fred, Jr. to drive his own car. This argument urges a literal interpretation of the substitution clause which would seemingly defeat the broad coverage intended by it, or at least make its meaning ambiguous.

To determine whether an insurance contract is unambiguous "[a]ll words, parts, and provisions of a policy must be construed together as one entire contract and all the terms and conditions of each part must be read and interpreted in the light of all the other parts. It is not permissible to lift one sentence from a policy and try to attach a particular meaning to that sentence standing alone" (29 N.Y. Jur., Insurance, § 602). (See, also, *Cross Armored Carrier Corp. v Valentine,* 49 Misc 2d 917, 920, affd 28 AD2d 1090.) Ambiguity should be construed so as to extend coverage to the insured, since "this policy was written by the insurer and any ambiguity is to be resolved against it" *(Greaves v Public Serv. Mut. Ins. Co.,* 5 NY2d 120, 125; *Hartford Acc. & Ind. Co. v Pate,* 254 Ark 286, 292; 12 Couch, Insurance 2d, § 45:344). Nor can the substitution clause be used to defeat the purpose of the omnibus clause, which as a matter of public policy is standard in such insurance contracts. Being the draftsman of the policy the insurer could have inserted a clause limiting coverage in just such a situation as we have in the instant case, if it had wished *(Matter of Vanguard Ins. Co. [Polchlopek],* 18 NY2d 376, 381; *Sperling v Great Amer. Ind. Co.,* 7 NY2d 442, 450).

In resolving ambiguities in the "permission or consent" provisions of the omnibus clause with the "temporary substitute automobile" clause it has been stated that consent may be express or implied. "Implied permission may arise as a product of the present or past conduct of the insured, and the relationship between the parties * * * [P]ermission to use an

automobile need not be given in express words, but may be implied from all the facts and circumstances surrounding the parties" (12 Couch, Insurance 2d, § 45:352; *Nationwide Mut. Ins. Co. v Fireman's Fund Ins. Co.,* 279 NC 240, *supra).* The record indicates that respondents knew of and in fact suggested that Fred, Jr. substitute his car for Hazel's when Hazel's car would not start. Substantial authority in other jurisdictions supports the holding in *Hemphill v Home Ins. Co.* (121 Ga App 458; 121 Ga App 323) that the permission of the owner provision relates only to the purpose for which permission was given and not to the identity of the operator of the automobile (cf. *State Farm Mut. Auto. Ins. Co. v Johnston,* 9 Cal 3d 270).

Finally, appellant urges that by virtue of section V (subd [d], par [3]) of the policy New Hampshire cannot be held liable if the accident occurred while the automobile was being used in a business or occupation of such named insured or spouse unless the automobile was being operated by the named insured, spouse, chauffeur or domestic servant. Since respondents can only be held liable to the plaintiffs in the main action if it is found that Fred, Jr. was acting as their employee and in the scope of his employment, appellant argues that such a finding would bring into operation the exclusion of section V (subd [d], par [3]). However, a reading of subdivision (d) of section V in the context of the entire policy demonstrates that section V is intended to extend coverage to "other" automobiles, i.e., beyond those automobiles defined in section IV. Subdivision (d) is an exclusion to the provision extending to "other" automobiles described in section V only, for it appears within section V, and it cannot be reasonably interpreted to apply to section IV automobiles as well. Thus, if the Fred, Jr. automobile was as a "temporary substitute automobile", an automobile within section IV, then the section V exclusions have no effect on coverage.

The order should be affirmed.

SIMONS, J. (dissenting). We do not reach the merits because in our view the third-party plaintiffs are barred from proceeding in this 1965 accident claim as a result of the dismissal of the original third-party complaint pursuant to CPLR 3211 (subd [a], pars 1, 7).

It was alleged in that complaint that New Hampshire Insurance Company issued a policy of insurance which provided coverage for any liability of third-party plaintiffs arising

out of the accident involving their son. The motion was supported by the policy itself and facts conceded pursuant to an unanswered notice to admit.

The court necessarily reviewed precisely the same issue which confronts us here, i.e., did the policy provide coverage to third-party plaintiffs, because the question of coverage had to be determined at that time on the basis of the policy itself (cf. *Greeff v Equitable Life Assur. Soc.,* 160 NY 19, 29; *Red Robin Stores v Rose,* 274 App Div 462, 465). It ruled against the third-party plaintiffs.

The third-party plaintiffs offered no opposition to the motion, did not request leave to replead in the event of an adverse determination (see CPLR 3211, subd [e]) and did not appeal the dismissal.

The insertion of additional paragraphs in this second third-party complaint to allege coverage under the substitute automobile provision in conclusory fashion adds nothing to the original complaint and does not state a different cause of action. The action was, therefore, barred by *res judicata (Flynn v Sinclair Oil Corp.,* 20 AD2d 636, affd 14 NY2d 853).

Furthermore, this motion to dismiss should be granted because of the third-party plaintiffs' failure to request leave to replead in affidavit form at the time of the motion addressed to their first complaint (CPLR 3211, subd [e]; see *Cushman & Wakefield v John David, Inc.,* 25 AD2d 133). The drafters of the CPLR wisely included this requirement among the practice provisions to prevent serial pleadings upon meritless claims. If a pleader has a valid cause of action, although not properly stated or pleaded, it is the purpose of the statute to permit him to litigate it, but the burden rests upon the pleader to demonstrate the fact of merit upon the motion to dismiss and obtain the court's permission to replead. If subdivision [e] is to have any meaning, the added allegations in the second complaint should have been presented to the court by third-party plaintiffs at the time of the original motion for its consideration together with an application to replead (see *Souveran Fabrics Corp. v Virginia Fibre Corp.,* 37 AD2d 925; *Chartered Bank v American Trust Co.,* 48 Misc 2d 314, affd 26 AD2d 623; cf. *Lee v Wiegand,* 28 AD2d 560).

The third-party plaintiffs having failed to do so, their third-party complaint should be dismissed.

CARDAMONE and DEL VECCHIO, JJ., concur with GOLDMAN,

J.; MOULE, J. P., and SIMONS, J., dissent and vote to reverse the order and grant the motion to dismiss third-party complaint, in an opinion by SIMONS, J.

Order affirmed with costs.