## NATIONWIDE MUTUAL INSURANCE COMPANY *v.* ELSA CASSIN (14343)

SHEA, GLASS, COVELLO, BORDEN and BERDON, Js.

Argued October 30, 1991—decision released January 21, 1992

1

2

*Peter D. Clark,* with whom, on the brief, was *Elizabeth E. Robear,* for the appellant (plaintiff).

*Carey B. Reilly,* for the appellee (defendant).

BORDEN, J. The issue in this appeal is whether the defendant, Elsa Cassin, is entitled to uninsured motorist benefits under the provisions of an insurance policy issued to her by the plaintiff, Nationwide Mutual Insurance Company. The plaintiff appeals from the judgment of the trial court granting the defendant's motion to confirm an arbitration award in the amount of $100,000 in favor of the defendant. We reverse.

The parties stipulated to the following facts. On December 10, 1983, Arnold Cassin was involved in a motor vehicle accident in the town of Greenwich while operating a 1977 Cadillac Seville in which his wife, the defendant and owner of the automobile, was a passenger.[1] At the time of the accident, the defendant was the named insured on an insurance policy (policy) issued by the plaintiff that specifically covered the defendant's Cadillac. The policy, entitled "Nationwide's Century II Auto Policy," provided, inter alia, liability and collision coverage. The policy also contained mandatory endorsement 1751, entitled "New York Automobile Accident Indemnification Endorsement," which provided uninsured motorist coverage, in the amount of

[1] The defendant and her husband were residents of New York at the time of the accident. The other vehicle involved in the accident was owned by a Connecticut resident who is not involved in this appeal.

$10,000 per person and $20,000 per accident, for all accidents occurring in the state of New York.[2] In addition, the defendant had purchased and the policy contained endorsement 1737, entitled "Supplementary Uninsured Motorist Insurance," which provided increased uninsured motorist coverage in the amount of $100,000 per person and $300,000 per accident, underinsured motorist coverage, and coverage for all accidents occurring within the United States.[3]

---

[2] Endorsement 1751 provided in pertinent part: "INSURING AGREEMENTS

"I. DAMAGES FOR BODILY INJURY CAUSED BY UNINSURED AUTOMOBILES

"The [insurance] company will pay all sums which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury . . . sustained by the insured, caused by accident and arising out of the . . . use of such uninsured automobile . . . .

"II. DEFINITIONS . . .

"(b) Uninsured Automobile. The term 'uninsured automobile' means:

"(1) an automobile [that does not have] . . . a bodily injury liability . . . insurance policy applicable at the time of the accident . . . or [that does have] . . . a bodily injury liability . . . insurance policy applicable at the time of the accident but the [insurance] company writing the same disclaims liability or denies coverage thereunder . . . (2) . . . *but the term 'uninsured automobile' shall not include: (i) an automobile owned by the named insured or spouse* . . . .

"III. TERRITORY

"This endorsement applies only to accidents which occur within the state of New York. . . .

"CONDITIONS . . .

"5. Limits of Liability. (a) The limit of the [insurance] company for all damages . . . because of bodily injury sustained by one person as the result of any one accident is $10,000 and . . . the total limit of liability of the company for all damages . . . because of bodily injury sustained by two or more persons . . . as the result of any one accident is $20,000. . . ." (Emphasis added.)

[3] Endorsement 1737 provided in pertinent part: "This amends the insurance provided by your New York Accident Indemnification Endorsement. The first subdivision, designated (1), of the definition of 'uninsured automobile' is amended to include 'underinsured highway vehicle,' subject to the following provisions:

"1. The dollar limits of liability [that are] . . . stated on the Declarations of the policy . . . shall apply in lieu of any limits stated in the New

The defendant, who had sustained personal injuries as a result of the accident, filed a complaint against her husband in the Superior Court in Stamford alleging that his negligent conduct caused her injuries. The defendant's husband, who was covered under the liability portion of the policy,[4] forwarded the complaint to the plaintiff, directing the plaintiff to pay any damages he had become legally obligated to pay to the defendant as a result of the accident.[5] The plaintiff informed the defendant's husband that there was no liability coverage for a claim against him by his spouse under the terms of the policy and under the provisions of New York Insurance Law § 3420 (McKinney 1985).[6]

York Automobile Accident Indemnification Endorsement. . . .

"5. *This endorsement does not apply to bodily injury to an insured while occupying a highway vehicle (other than one insured for this coverage by this policy) owned by a named insured or any relative or through being struck by such a highway vehicle.* . . .

"It is further agreed that such insurance . . . is also extended to accidents that occur outside the state of New York but within the United States of America . . . ." (Emphasis added.)

Endorsement 1737 increased the limits of such uninsured motorist coverage from $10,000 per person and $20,000 per accident to $100,000 per person and $300,000 per accident by specifically incorporating the policy's liability coverage limits, stated in the policy's "Declaration," in lieu of the lesser amounts stated in endorsement 1751.

[4] The policy provided liability coverage to the named insured and any "[p]ersons who live in [the named insured's] home . . . ." Since the defendant and her husband lived in the same home, the defendant's husband had liability coverage for any claims against him arising out of his negligent operation of the vehicle.

[5] The liability coverage provided that the plaintiff "will pay for damages that [the insured or her husband is] legally obligated to pay as a result of an accident arising out of the . . . use . . . of [the] auto." See footnote 4, supra.

[6] New York Insurance Law § 3420 (g) (McKinney 1985) provides in pertinent part: "No policy or contract shall be deemed to insure against any liability of an insured because of death of or injuries to his or her spouse . . . unless express provision relating specifically thereto is included in the policy. . . ." Since the policy did not include a provision providing liability coverage for injury to a spouse, the personal injury claim brought by the defendant against her husband was not covered under the liability portion of the policy.

Thereafter, the defendant made a demand, pursuant to the policy, for arbitration[7] with the American Arbitration Association, claiming that since the plaintiff had refused to indemnify her husband's liability for the accident, the 1977 Cadillac Seville was an uninsured automobile and, therefore, she was entitled to uninsured motorist benefits under the policy. The three member arbitration panel concluded, by a vote of two to one, that the defendant was entitled to uninsured motorist coverage under the policy in the amount of $100,000. The arbitration panel held that paragraph 5 of endorsement 1737 provided uninsured motorist coverage to the defendant while she was occupying the insured automobile.

The plaintiff then filed an application to vacate the arbitration award in the Superior Court, and the defendant filed a motion to confirm the award. The trial court confirmed the award, stating that even though New York law does not require the insurer to provide coverage for interspousal suits in the liability portion of the policy, an individual may purchase coverage for such a suit, and that paragraph 5 of endorsement 1737 effectuated such coverage. The plaintiff appealed to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 4023.

The plaintiff claims that the trial court improperly interpreted the terms of the policy in concluding that the policy provided uninsured motorist coverage to the defendant in this case. We agree.

Since the insurance policy contract was made in New York and the parties agree that New York law applies; see *Jenkins* v. *Indemnity Ins. Co.*, 152 Conn. 249, 253, 205 A.2d 780 (1964); we apply New York law in order

---

[7] The uninsured motorist portion of the policy provided that in the event of a coverage dispute, the dispute would be settled by arbitration.

to construe the insurance contract.[8] Under New York law, it is for the court to determine the parties' rights and obligations under an insurance policy based on the specific language of the policy. *Harrigan* v. *Liberty Mutual Fire Ins. Co.,* 170 App. Div. 2d 930, 930–31, 566 N.Y.S.2d 755 (1991). In order to determine whether a contract of insurance is ambiguous, all provisions must be construed as one entire contract and must be read and interpreted in light of each other. See, e.g., *VanMinos* v. *Merkley,* 48 App. Div. 2d 281, 286, 369 N.Y.S.2d 246 (1975); see also *Cross Armored Carrier Corporation* v. *Valentine,* 49 Misc. 2d 917, 268 N.Y.S.2d 792, aff'd, 28 App. Div. 2d 1090, 283 N.Y.S.2d 1016 (1966). The court will not find an ambiguity in an insurance policy where none exists. *Miccio* v. *National Surety Corporation,* 170 App. Div. 2d 937, 938, 566 N.Y.S.2d 760 (1991).

The plaintiff contends that endorsement 1751 II (b) (2) (i) of the policy; see footnote 2, supra; specifically excludes coverage in this situation.[9] The defendant claims that because her husband is not covered under the liability portion of the policy for the negligence claim she brought against him, she is entitled to coverage under the uninsured motorist portion of the policy on the basis of paragraph 5 of endorsement 1737. We agree with the plaintiff.

---

[8] The parties agree that there is no New York case directly on point with the particular facts of this case and our research has revealed no such case.

[9] The plaintiff also claims that the provisions in endorsement 1737 apply only to underinsured motorist claims so that even if the defendant is correct in her contention that paragraph 5 of endorsement 1737 does provide uninsured automobile coverage to the defendant, there can be no such coverage in this case because the defendant claims uninsured motorist coverage and not underinsured coverage. Since we agree with the plaintiff's alternative claim that paragraph 5 of endorsement 1737 does not extend uninsured motorist benefits to the defendant in this case, we assume, without deciding, that the provisions in endorsement 1737 apply to uninsured motorist claims as well as underinsured motorist claims.

Paragraph I of endorsement 1751, the mandatory uninsured motorist portion of the policy, states that "[t]he [insurance] company will pay all sums which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury . . . sustained by the insured, caused by accident and arising out of the . . . use of such uninsured automobile . . . ." See footnote 2, supra. Paragraph II (b) (2) (i) of the endorsement further states that "the term 'uninsured automobile' shall *not* include . . . an automobile owned by the named insured . . . ." (Emphasis added.) See footnote 2, supra. Therefore, based on the plain language of the policy, the defendant cannot collect uninsured motorist benefits from the plaintiff because the automobile involved in this case was owned by the defendant when the accident occurred, and thus was not an "uninsured automobile" within the terms of the policy.

The defendant claims, however, that paragraph 5 of endorsement 1737 amended endorsement 1751 II (b) (2) (i) so as to provide uninsured motorist coverage in this situation. Endorsement 1737 provides that the "definition of 'uninsured automobile' is amended to include [an] 'underinsured highway vehicle,' subject to the following provisions . . . 5. This endorsement does not apply to bodily injury to an insured while occupying a highway vehicle (*other than one insured for this coverage by this policy*) owned by a named insured . . . ." (Emphasis added.) See footnote 3, supra. The defendant contends that the language within the parentheses in paragraph 5 of endorsement 1737 amends endorsement 1751 to include within the meaning of "uninsured automobile" any automobile that was specifically insured in the declaration of the policy. Since the 1977 Cadillac Seville was the specifically insured automobile as stated in the declaration of the

policy, the defendant contends that it comes within the amended definition of uninsured automobile. We disagree.

The insurance contract must be construed as one entire contract and paragraph 5 of endorsement 1737 must be interpreted in light of the other contract provisions. See, e.g., *VanMinos* v. *Merkley,* supra, 286. Endorsement 1751 provides mandatory uninsured motorist coverage to the insured.[10] This endorsement limits coverage to $10,000 for bodily injury sustained by one person as a result of an accident and $20,000 for bodily injury sustained by two or more persons as the result of an accident. The endorsement also provides uninsured motorist coverage only for accidents occurring in New York. Endorsement 1737 was purchased by the defendant to provide increased supplementary uninsured motorist coverage to the insured,[11] and

---

[10] Section 3420 (f) (1) of the New York Insurance Law (McKinney 1985) mandates such coverage and provides in pertinent part: "No policy insuring against loss resulting from liability imposed by law for bodily injury . . . arising out of the ownership, maintenance and use of a motor vehicle by the insured shall be issued . . . by any authorized insurer upon any motor vehicle . . . unless it contains a provision whereby the insurer agrees that it will pay to the insured . . . all sums, not exceeding a maximum amount . . . of ten thousand dollars . . . on account of injury to . . . one person, in any one accident, and the maximum amount . . . [of twenty thousand dollars] for any one person so injured . . . on account of injury to . . . more than one person in any one accident, which the insured . . . shall be entitled to recover as damages from an owner or operator of an uninsured motor vehicle . . . ."

[11] Endorsement 1737 tracks the language used in § 3420 (f) (2) of the New York Insurance Law (McKinney 1985), which provides in pertinent part: "Any . . . policy shall, at the option of the insured, also provide supplementary uninsured motorists insurance for bodily injury, in an amount up to the bodily injury liability insurance limits of coverage provided under such policy, subject to a maximum of one hundred thousand dollars because of bodily injury to . . . one person in any one accident and . . . up to three hundred thousand dollars because of bodily injury to . . . two or more persons in any one accident. Supplementary uninsured motorists insurance shall provide coverage, in any state . . . if the limits of liability . . . of another motor vehicle liable for damages are in a lesser amount than the bodily injury liability insurance limits of coverage provided by such policy. . . ."

amended the uninsured motorist coverage provided in endorsement 1751 in three specified ways.[12] First, the endorsement amended the definition of uninsured automobile by providing coverage for certain underinsured automobiles.[13] Second, endorsement 1737 increased the uninsured motorist coverage to $100,000 for bodily injury sustained by one person as a result of an accident and $300,000 for bodily injury sustained by two or more persons as the result of an accident. Third, the endorsement provided coverage for accidents occurring outside New York.

The only sensible reading of paragraph 5 of endorsement 1737, however, is that it excluded the applicability of these increased supplementary benefits in situations where the insured was injured in an accident while occupying an automobile owned by her that was not specifically named in the declaration of the insurance policy as the insured vehicle. Thus, if the insured were injured in another automobile that she owned, and that automobile was not specifically listed as an insured automobile in the policy's declaration, the increased supplementary benefits provided in endorsement 1737 would not apply and the insured would be limited to the uninsured motorist coverage set out in endorsement 1751. This provision is commonly known as an "owned-vehicle" exclusion. Annot., 30 A.L.R.4th 172. "The thrust of this exclusion is that the owner of a vehicle . . . occupying the vehicle when it is involved in an accident with an uninsured motorist can recover only

---

[12] Endorsement 1737 provided: "This amends the insurance provided by your New York Accident Indemnification Endorsement [1751]."

[13] Endorsement 1751 only provided uninsured motorist coverage. Endorsement 1737 provided that "the definition of 'uninsured automobile' is amended to include 'underinsured highway vehicle' . . . ." An " 'underinsured highway vehicle' means a highway vehicle for which there are Bodily Injury Liability coverage . . . in effect . . . [however,] [t]heir total amount . . . is less than the limits of coverage provided by the policy for the vehicle to which this coverage is applicable."

under an uninsured motorist endorsement specifically covering that vehicle and may not resort to coverage for a different family vehicle." Id., 175 n.1. Such an "owned-vehicle" exclusion has an effect similar to that of endorsement 1751 II (b) (2) (i) in that it excludes uninsured motorist coverage in certain situations. Id., 175 n.3. It would be anomalous to read this language of exclusion in paragraph 5 of endorsement 1737 as creating increased uninsured motorist coverage that had previously been excluded under 1751 II (b) (2) (i). It is, therefore, unlikely that the parties intended to expand uninsured motorist coverage by means of such an exclusionary clause. See, e.g., *De Forte* v. *Allstate Ins. Co.,* 81 App. Div. 2d 465, 468, 442 N.Y.S.2d 307 (1981) (read insurance policy in reasonable manner to determine intent of parties).

The purpose of paragraph 5 of endorsement 1737 was not, as the defendant argues, to delete the owned car exclusion in endorsement 1751 II (b) (2) (i) from the definition of uninsured automobile. Paragraph 5 of endorsement 1737 did not change the definition of an uninsured automobile provided in endorsement 1751. The purpose of paragraph 5 was to exclude the applicability of the defendant's increased supplementary uninsured motorist coverage in situations where the defendant sustained injuries by an uninsured automobile while occupying an automobile owned by her but not named as the insured automobile in the policy's declaration. Thus, paragraph 5 dealt with a factual scenario that is not related to this case, and is simply irrelevant to the merits of the defendant's claim for uninsured motorist coverage. That claim remains controlled by the terms of endorsement 1751, which specifically excluded the defendant's automobile from the definition of an uninsured automobile, and thus excluded any claim for uninsured motorist benefits arising out of the occupancy of that automobile.

Furthermore, the defendant's interpretation of the policy is illogical when viewed in the context of New York Insurance Law § 3420 (f) and (g) (McKinney 1985). Section 3420 (g) provides that the insurer need not provide bodily injury liability coverage for interspousal claims. The purpose behind this statute is to protect insurers from collusive actions between husbands and wives by permitting the insurer to refrain from providing such interspousal liability coverage. *Schwartz* v. *S. Lipkin & Son, Inc.*, 76 App. Div. 2d 141, 144, 430 N.Y.S.2d 356 (1980); *U.S. Fidelity & Guaranty Co.* v. *Franklin*, 74 Misc. 2d 506, 511, 344 N.Y.S.2d 251, aff'd, 43 App. Div. 2d 844, 352 N.Y.S.2d 1009 (1973); *Fuchs* v. *London & Lancashire Indemnity Co. of America*, 258 App. Div. 603, 605, 17 N.Y.S.2d 338, appeal denied, 259 App. Div. 731, 19 N.Y.S.2d 311 (1940); see also note, Interspouse Liability Excluded From Casualty Insurance," 8 Syracuse L. Rev. 247 (1957). This provision was enacted for the benefit of the insurer. *Crilley* v. *Allstate Ins. Co.*, 38 Misc. 2d 371, 372, 238 N.Y.S.2d 125 (1963).

In this case, the plaintiff availed itself of its right under § 3420 (g) not to provide such interspousal liability coverage. Thus, the defendant's husband's liability claim was rightfully denied. Under the defendant's interpretation of the policy, however, by virtue of the very absence of such interspousal liability coverage there would be automatic coverage for uninsured motorist benefits. This would render the interspousal exclusion from liability coverage meaningless. Under this interpretation, since the insurer took advantage of its statutory right to exclude from liability coverage a claim by one spouse for injuries caused by her negligent spouse, it would thereby have burdened itself with providing uninsured motorist coverage for the very same claim by the injured spouse. This interpre-

tation is contrary to the purpose of § 3420 (g) that insurers need not insure against such interspousal claims. We decline to read this policy so as to lead to such an incongruous result.

The judgment is reversed and the case is remanded with direction to render judgment vacating the arbitration award.

In this opinion the other justices concurred.