Lorraine C. CULLEN, John L. Jund, Manny Trotner, on behalf of themselves and all others similarly situated, and Civil Service Merit Council of Long Island, Plaintiffs,

v.

NEW YORK STATE CIVIL SERVICE COMMISSION, Victor Bahou, President, Nassau County Civil Service Commission, Adele Leonard, Commissioner, the County of Nassau, Ralph G. Caso, County Executive of the County of Nassau, Town of Hempstead Civil Service Commission, Sidney Rosenthal, Commissioner, Town of Hempstead, Francis T. Purcell, Presiding Supervisor, Nassau County Republican Committee, Joseph F. Margiotta, County Leader, Defendants.

No. 76 C 2247.

United States District Court,
E. D. New York.

June 27, 1977.

Supplemental Opinion July 29, 1977.

Jessel Rothman, P. C., Mineola, N. Y., for plaintiffs; Sheldon Rosenblum, Mineola, N. Y., of counsel.

Curtis, Hart & Zaklukiewicz, Merrick, N. Y., for Nassau County Republican Committee and Joseph F. Margiotta.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for New York State Civil Service Comn.

Peter T. King, Acting County Atty. of Nassau County, Mineola, N. Y., for Nassau County Civil Service Comn., Adele Leonard, County of Nassau and Ralph G. Caso.

W. Kenneth Chave, Jr., Town Atty., Hempstead, N. Y., for Town of Hempstead and Town of Hempstead Civil Service Comn.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, Chief Judge.

This lawsuit, brought pursuant to § 1983 of Title 42, United States Code, seeks monetary and injunctive relief for the alleged deprivation of constitutional rights by public officials and governmental units in the County of Nassau on Long Island. Jurisdiction is predicated on 28 U.S.C. § 1343(3). The essence of the complaint is that in order to obtain an appointment or promotion to a position with the county government, a job-seeker or holder must contribute or agree to contribute at least one percent of his annual salary to the Nassau County Republican Committee.

The plaintiffs are present or former Civil Service employees in Nassau County, who claim to have been denied promotion or appointment because they refused to make contributions to the Republican organization. The plaintiff Civil Service Merit Council of Long Island is an unincorporated association formed, according to plaintiffs, by "collective bargaining units," whose members are civil service employees in Nassau County.

The defendants include the Nassau County Republican Committee and the County Republican Leader, Joseph F. Margiotta; a New York State governmental unit, the New York State Civil Service Commission; and local governmental units, including the Town of Hempstead and the Nassau County Board of Supervisors. A number of local government officials are named in the caption, although it is not clear whether they are sued in their individual or in their representative capacities, or in both capacities.

The defendants move to dismiss the complaint on the grounds that the action is barred by the doctrine of *res judicata* ; that the complaint fails to state a cause of action; and that the court lacks jurisdiction over the defendants. The plaintiffs present a motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order granting their action class status and designating them as representatives of 22,000 "similarly situated" civil service employees.

The allegations of the complaint, which can not be dismissed for failure to state a claim unless it is clear that plaintiffs can prove no set of facts entitling them to relief, see *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), suggest that the defendants have trampled on the first amendment rights of countless numbers of civil service employees in order to strengthen the financial base of the Nassau County Republican Party. Collectively, the defendants allegedly have the power to appoint individuals on the Civil Service eligibility lists to positions in the municipal and county governments. In order to obtain such a position, or to achieve a promotion within the governmental unit, the applicant or employee must contribute part of his salary to the Nassau County Republican Committee. The pressure to make contributions apparently is generated by party officials acting in concert with elected public officials who have the power to hire or fire and promote or demote thousands of civil servants in Nassau County.

The complaint, for example, alleges that John Jund, after a competitive examination, was placed on the eligibility list for appointment to the position of Sanitation Foreman, Town of Oyster Bay & North

Hempstead. He was informed, however, that appointment to the position depended on contributing to the Nassau County Republican Committee and joining a Republican Club. Jund, who refused to contribute, did not obtain the sanitation job. Later, he made political contributions in order to obtain a chauffeur's job. When he stopped contributing, he was reduced to the position of "Helper."[1]

## Discussion

■■■ The right to associate with individuals or organizations for the promulgation and advancement of political beliefs and ideas is a form of "'orderly group activity' protected by the First and Fourteenth Amendments." *Kusper v. Pontikes*, 414 U.S. 51, 56–57, 94 S.Ct. 303, 307, 38 L.Ed.2d 260 (1973), *quoting NAACP v. Button*, 371 U.S. 415, 430, 83 S.Ct. 328, 336, 9 L.Ed.2d 405 (1963). At the core of the present case is the equally basic principle that the right to associate includes the right of affiliation with the political party of one's choice or the right not to affiliate

with a political party at all. *See Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). This "freedom to affiliate" can be abrogated by indirect methods such as compelled disclosure of membership in an organization committed to controversial goals or ideals, *see Bates v. City of Little Rock*, 361 U.S. 516, 522–23, 80 S.Ct. 412, 416, 4 L.Ed.2d 480 (1960); *NAACP v. State of Alabama*, 357 U.S. 449, 462, 78 S.Ct. 1163, 1172, 2 L.Ed.2d 1488 (1958), or by more direct attack, such as legislation making it impossible for political parties other than Republican or Democratic to qualify for the ballot, *see Williams v. Rhodes, supra*. More recently, the Supreme Court recognized the subtle links between protected political activity and financial contributions to a political candidate or to political parties. In *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), involving a challenge to federal regulation of campaign spending, the Court observed that "[m]aking a contribution, like joining a political party, serves to affiliate a person

1. Objections are made by many of the defendants that the complaint fails to link the named defendants to the specific alleged denials of employment or promotion. We agree, first of all, that the complaint is not a model of pleadings draftsmanship. However, at this stage of the litigation the complaint sufficiently apprises the defendants of the alleged actionable conduct, specifically, that the defendants together have fostered the practice of requiring political contributions as a precondition to employment or promotion in Nassau County government, and that the plaintiffs were denied promotion or employment because of this practice. Whether each of the defendants needs to be linked to each alleged instance of coercion of payments is a legal issue that neither side has properly briefed, and which need not be decided now, *see Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), and a possible fact question, which it seems to us, should not be dealt with simply on the basis of the pleadings. This point gains added force in light of our granting of the class action motion, which significantly expands the litigation and which may bring additional counsel into the case on behalf of the absentee plaintiffs.

Moreover, in opposing the motions to dismiss, the plaintiffs have supplied affidavits alleging that several of the individual defendants participated in the alleged coercion of political payments. For example, John Jund alleges in an

affidavit that he was told that a salary increase was delayed because

the Republican Club was holding up the final approval of my promotion and that I should speak with my Committeeman, Harry Norwalk. I was informed by Mr. Norwalk that the 1% I paid to the Nassau County Republican Committee was not enough; shortly thereafter I lost my promotion to chauffeur and was once again made an ordinary laborer.

(Jund affidavit, at 2).

In a similar vein, Michael Landi, another plaintiff, claims in an affidavit that he was

approved by the Nassau County Civil Service Commission for the position of Superintendent of Highway Maintenance, Grade 21, noncompetitive. . . . Upon the failure to contribute the 1% of my annual salary and to purchase tickets for various Nassau County Republican Committee affairs, I was subject to threats by Joseph Margiotta, Easa Easa and Frank A. Nicoll, the Deputy Commissioner of the Department of Public Works.

(Landi affidavit, at 1–2).

While we in no way express an opinion as to the merits of these allegations and the other allegations of the complaint, the point remains that the complaint together with the affidavits are sufficiently specific in their allegations to survive a motion for judgment on the pleadings.

with a candidate." *Id.* at 22, 96 S.Ct. at 636.

One of the most sensitive areas involving first amendment rights is political activity by public employees. There is without question a state interest in regulating the political activity of public employees in order to efficiently serve public needs. *E. g., United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). At the same time, while there is no right to the governmental benefits of civil service employment, once those benefits are made available on the basis of merit, denial of employment or promotion may not be conditioned on the making of a financial contribution to a political party. *See Abood v. Detroit Board of Ed.*, 431 U.S. 209, 233–237, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977); *Elrod v. Burns*, 427 U.S. 347, 363, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976). *See also Pickering v. Board of Ed.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L. Ed.2d 231 (1960). To do so is a severe and intolerable infringement of the right of association. No conceivable state interest is served by coercing public employees into making political contributions.[2] The employee is told, in effect, that in order to work for a county or local government he must give up his right to choose party affiliation or his right to avoid supporting party positions and political views with which he does not agree. To paraphrase Justice Brennan, the financial assistance the employee is induced to provide to a political party furthers the advancement of that party's policies to the detriment of his or his own party's beliefs, and "any assessment of his salary is tantamount to coerced belief." *Elrod v. Burns, supra,* 427 U.S. at 355, 96 S.Ct. at 2681. Plainly, such conduct by persons in official positions is an unacceptable invasion of constitutional rights, actionable under the civil rights statutes.

The defendants, however, have raised a number of procedural and jurisdictional objections to the consideration of this complaint in federal court. We turn to examine those objections, as well as the motion for class certification.

## 1. Res Judicata

The defendants argue that state court proceedings involving similar claims by the plaintiffs have a *res judicata* effect, barring this case from federal court.

On December 2, 1974, several of the present plaintiffs[3] filed an action seeking, *inter alia*, declaratory and injunctive relief against many of the current defendants in New York State Supreme Court in Nassau County. The complaint alleged that, in various ways, the plaintiffs were requested or urged to make political contributions to the Republican Party and that in two instances, the failure to comply resulted in denial of promotion. These actions allegedly violated provisions of the New York Civil Service Law and the New York State Election Law.

On February 18, 1975, State Supreme Court Justice Albert granted the defendants' motions to dismiss for failure to state a cause of action. Justice Albert ruled that "[t]he allegations of the complaint are fatally defective in that said allegations are totally speculative and conclusory and fail

---

**2.** In *Elrod v. Burns, supra*, the Supreme Court held that the discharge of public employees in nonpolicymaking positions because of their political affiliations or nonaffiliations violates the first and fourteenth amendments. The Court identified several state interests underlying patronage dismissals, including the need for political loyalty and the preservation of the party system. These interests do not exist in this case. The apparent emphasis of the challenged practice is to generate money, not to screen out the supporters of other parties. If anything, coercing contributions from civil service employees is likely to engender party disloyalty. Similarly, while the alleged practice greatly benefits the Republican organization, it only can exist at the financial expense of other political parties. The "1%" rule undercuts substantially the concept of a pluralistic political system.

**3.** Plaintiffs Cullen, Jund and the Civil Service Merit Council were also plaintiffs in the state court proceedings.

to state a cause of action against the named defendants." Justice Albert found no actual allegation in the complaint that the defendants had been involved in a conspiracy or in any way linked to the "serious charges" raised by plaintiffs, and that, at best, "plaintiffs were allegedly prejudiced by the 'suggestion' or 'instructions' of certain unnamed individuals." The complaint was dismissed without leave to replead, pursuant to N.Y.C.P.L.R. § 3211(e) (McKinney 1970). *Cullen v. Margiotta*, 81 Misc.2d 809, 367 N.Y.S.2d 638, No. 74–19518 (1975).

Subsequently, on May 16, 1975, Justice Albert denied the plaintiffs' motion for reargument and for leave to replead on the ground that it was untimely and that, in any event, "the deficiencies contained in the original complaint [had] not been cured by the proposed amended complaint." The plaintiffs appealed both of Justice Albert's rulings, but, on October 1, 1976, the appeal was dismissed by the Appellate Division because the plaintiffs had failed to appear on the call of the calendar.

The plaintiffs retained a different law firm and applied to Justice Albert for reargument, requesting leave to file an amended complaint. The proposed amended complaint, nearly identical to the complaint later filed in this court, included the allegation that the defendants had violated the first amendment. On November 15, 1976, Justice Albert denied the application, treating it as a motion to reargue. The Justice found that the only additional facts alleged in the proposed complaint were the indictments of Town of Hempstead employees, none of whom were named as defendants in the civil matter, for alleged coercion of political contributions. The State Supreme Court Justice dismissed these allegations as a "bootstrap" argument that failed to show the existence of a conspiracy on the part of the named defendants. He went on to state that

> when high public officials in our government are charged with violations of law, conclusory labels, assumptions and conjecture are no substitutes in judicial proceedings for facts which should initially be derived from disciplined investigation.

Justice Albert also concluded that the motion for reargument was not timely and that, rather, the appropriate recourse for the plaintiffs was the appeal to the Appellate Division.

With respect to the motion for class status, Justice Albert found it unnecessary to decide that question, although he noted that

> just a cursory review of the allegations of the proposed amended complaint indicates on the face thereof that it fails to properly allege a conspiracy among the named defendants to violate the applicable laws herein, such as is required in pleading such an action. . . .

*Cullen v. Margiotta,* No. 74–19518 (Sup.Ct. Nov. 15, 1976) (citation omitted).

The familiar principles underlying the doctrine of *res judicata* do not need to be elaborated here. In this case, since the parties are essentially the same as in the state proceedings, the critical issue is whether "the right, question or fact" determined in the state proceedings is the same as that presented by the federal action. *Mitchell v. NBC,* 553 F.2d 265 at 268 (2d Cir. 1977), *quoting Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). As we analyze the state proceedings, there were two distinct determinations in the state courts that must be examined for *res judicata* effect. The first was the dismissal of the original complaint without leave to replead. The second was the denial, on two occasions, of what apparently were motions to reargue the original dismissal.

▉ The dismissal of a complaint for failure to state a claim "is *res judicata* as to the then existing claim which plaintiff was attempting to state." *Carter v. Money Tree Company,* 532 F.2d 113, 115 (8th Cir.), *cert. denied,* 426 U.S. 925, 96 S.Ct. 2636, 49 L.Ed.2d 380 (1976); *Glick v. Ballentine Produce, Inc.,* 397 F.2d 590, 593 (8th Cir. 1968). A judgment on the pleadings where, as here, the complaint is dismissed for lack of a necessary allegation, does not preclude filing a new complaint with new allegations. In *Gould v. Evansville and C.R.R.*

*Co.,* 91 U.S. 526, 534, 23 L.Ed. 416, 419 (1876), the Supreme Court observed that it is

> well settled, that, if the plaintiff fails on demurrer in his first action from the omission of an essential allegation in his declaration which is fully supplied in the second suit, the judgment in the first suit is no bar to the second, although the respective actions were instituted to enforce the same right; for the reason that the merits of the cause, as disclosed in the second declaration, were not heard and decided in the first action.

*Aurora City v. West,* 7 Wall. 90 [19 L.Ed. 42]; *Gilman v. Rives,* 10 Pet. 298 [9 L.Ed. 432]; *Richardson v. Barton* [Boston], 24 How. 188 [16 L.Ed. 625].

*Accord, Rinehart v. Locke,* 454 F.2d 313, 314 (7th Cir. 1971); *Thomas v. Consolidation Coal Co.,* 380 F.2d 69, 81–82 (4th Cir.), *cert. denied,* 389 U.S. 1004, 88 S.Ct. 562, 19 L.Ed.2d 599 (1967); Restatement of Judgments, § 50C (1942), *discussed in* 1B *Moore's Federal Practice* ¶ 0.409[1], at 1006–07 (1974 ed.). *See Weston Funding Corp. v. Lafayette Towers, Inc.,* 410 F.Supp. 980, 985 (S.D.N.Y.1976).

■ In the federal courts, at least, this approach is consistent with the liberal pleading allowed by the Federal Rules of Civil Procedure, in general, and the liberal allowance of amendments under Rule 15 of the Federal Rules, in particular. The latter provision directs that leave to amend a complaint "shall be freely given when justice so requires." There is little difference between preserving a cause of action from dismissal by amendments and reviving a dismissed action through a new complaint with new allegations. *See Nagler v. Admiral Corp.,* 248 F.2d 319, 322 (2d Cir. 1957). Indeed, a court has the discretion under Rule 15 to allow the amendment of a complaint after it has been dismissed for failure to state a claim, if the new allegations would support a viable cause of action. *See Asher v. Harrington,* 461 F.2d 890, 895 (7th Cir. 1972); *Ballou v. General Elec. Co.,* 393 F.2d 398, 399–400 (1st Cir. 1968), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971).

■ A different result, however, occurs when the cause of action is dismissed with prejudice. Such a dismissal "normally amounts to a final judgment on the merits and bars a later suit on the same cause of action." 1B *Moore's Federal Practice* ¶ 0.409, at 1008–09 (2d ed. 1974), *citing Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955). *Cf. Maddock & Miller, Inc. v. Mayer China Co.,* 241 F.Supp. 306, 311 (S.D. N.Y.1965). Rule 41(b) of the Federal Rules, for example, allows a court to dismiss an action with prejudice if, at the close of the plaintiff's case, the evidence fails to demonstrate a right to relief; if the plaintiff failed to diligently prosecute his case; and if the plaintiff failed to comply with the rules of the court. A Rule 41(b) dismissal, however, is considered a "drastic sanction to be applied only in extreme situations." *Syracuse Broadcasting Corp. v. Newhouse,* 271 F.2d 910, 914 (2d Cir. 1959), *quoted in* 9 Wright & Miller, *Federal Practice and Procedure* § 2369, at 193 (1971). *See Finley v. Parvin/Dohrmann Co.,* 520 F.2d 386, 391 (2d Cir. 1975).

■ In the state courts, a substantially different procedure exists for dismissal of complaints and the grant of leave to amend. Section 3211(e) of the New York Civil Practice Law and Rules, N.Y.C.P.L.R. § 3211(e) (McKinney 1970) provides that where a motion is made to dismiss because the pleading fails to state a cause of action,

> if the opposing party desires leave to plead again in the event the motion is granted, he shall so state in his opposing papers and may set forth evidence that could properly be considered on a motion for summary judgment in support of a new pleading; leave to plead again shall not be granted unless the court is satisfied that the opposing party has good ground to support his cause of action or defense; the court may require the party seeking leave to plead again to submit evidence to justify the granting of such leave.

This provision is a procedural device, apparently unique to the New York Civil Practice Law and Rules. The special requirement for leave to amend

> is designed to discourage the liberality with which leave to amend was granted after dismissal for legal insufficiency under the former practice—a major source of the delay and wastefulness that attended these motions—and at the same time to encourage preliminary disposition on the merits, a major purpose of CPLR 3211 generally.

4 Weinstein-Korn-Miller, *New York Civil Practice* ¶ 3211.01, at 32–18 (1975). *See* Siegel, *Practice Commentaries*, N.Y.C.P.L.R. C3211:64 (McKinney 1970). Under this rather harsh rule, to obtain leave to amend a party must make a request in the original pleading and in some manner demonstrate that he has "good ground" to support his cause of action. *Rochester Poster Advertising, Inc. v. Town of Penfield,* 51 A.D.2d 870, 380 N.Y.S.2d 153, 154 (4th Dep't 1976). *See Van Minos v. Merkley,* 48 A.D.2d 281, 284, 369 N.Y.S.2d 246, 249–50 (4th Dep't 1975).

 In this case, the dismissal of the complaint by Justice Albert without leave to replead does not represent a substantive judgment on the legal or factual merits of the complaint. Rather, it resolved the purely procedural question of whether, under New York rules of pleading, the plaintiff should be allowed to amend his complaint. *See* Siegel, *Practice Commentaries,* N.Y.C.P.L.R. § 3211, C3211:69 (McKinney 1970). The scope of the 3211(e) disposition is far more narrow than the issue presented to a federal court by a plaintiff seeking leave to amend, or by a motion to dismiss

with prejudice. Indeed, it would be accurate to say that in dismissing without leave to replead, the state court resolved an issue that has no counterpart in a federal proceeding on the same cause of action. While the state court judgment dismissing the complaint is *res judicata* of the allegations in the complaint as originally presented to the state court, the cause of action presented to this court involves substantially different allegations and theories of liability, including a first amendment claim. The complaint, moreover, is far more detailed and specific in its allegations of improper coercion of political contributions than was the original complaint. *See* note 1 *supra.* The denial of leave to replead does not represent a determination of the legal or factual merits of the new allegations.[4]

 The other determinations in the state court—the denial on two occasions of motions to reargue the original dismissal—can not be given *res judicata* effect. Even though the plaintiffs, to support the application to reargue, presented to the court an amended complaint nearly identical to the present one, the only issue, as defined by the state court, was whether, in dismissing the original complaint, "the Court overlooked any controlling principle of law or misapprehended any material fact." *Cullen v. Margiotta,* No. 74–19518 (Sup.Ct. Nov. 15, 1976). All that could have been decided was that the original dismissal without leave to replead was proper under § 3211(e) of the CPLR. Plainly, the state proceedings never resolved the legal or factual merits of the cause of action presently before us. Those proceedings therefore do not prevent consideration of the complaint.[5]

---

**4.** Indeed, in dismissing the first motion to reargue, Justice Albert explained that the original denial of leave to replead was due only to the plaintiffs' failure to "request leave to replead in opposing the original motions to dismiss, as is required by CPLR 3211, subd. (e). . . ." *Cullen v. Margiotta,* No. 74–19518 (Sup.Ct. May 13, 1975).

**5.** There is a full faith and credit aspect to this case. The dismissal of the complaint and denial of leave to replead represents a final judgment that bars further proceedings, except appeals, in the state courts. Under 28 U.S.C.

§ 1738, federal courts are obliged to give full faith and credit to judgments entered by state courts of competent jurisdiction, granting the state judgment the same effect it has in the state courts. However, "[o]ther well-defined federal policies, statutory or constitutional, may compete with those policies underlying section 1738." *American Mannex Corp. v. Rozands,* 462 F.2d 688, 690 (5th Cir.), *cert. denied,* 409 U.S. 1040, 93 S.Ct. 524, 34 L.Ed.2d 489 (1972), *quoted in Mitchell v. NBC, supra,* at 274. In this case, such reasons are present. A claim involving substantial first amendment vi-

## 2. Jurisdiction

All of the defendants move to dismiss on the ground that the court lacks jurisdiction over the parties, none of whom, it is asserted, are amenable to suit under § 1983. For analytical purposes, we find that there are several distinct categories of defendants, each presenting a different § 1983 jurisdictional issue. In the first category is a state governmental unit, the New York State Civil Service Commission. The second grouping includes local governmental units, the Town of Hempstead, the County of Nassau, the Town of Hempstead Civil Service Commission, and the Nassau County Civil Service Commission. The third category is the political defendants, the Nassau County Republican Committee and Joseph Margiotta, the Nassau County Republican Leader. Finally, the last group is the individual governmental officials, such as Victor Bahou, the President of the New York State Civil Service Commission, and Ralph G. Caso, the County Executive of Nassau County.

Section 1983 of Title 42, United States Code, of course, creates a civil action for deprivation of "rights, privileges or immunities secured by the Constitution and laws" by "person[s]" acting under color of state law. In *Monroe v. Pape,* 365 U.S. 167, 187–92, 81 S.Ct. 473, 484–86, 5 L.Ed.2d 492 (1961), and in *City of Kenosha v. Bruno,* 412 U.S. 507, 513, 93 S.Ct. 2222, 2226, 37 L.Ed.2d 109 (1973), the Supreme Court held that municipalities are not "persons" within the meaning of § 1983, whether sued under legal or equitable theories of action. In *Moor v. County of Alameda,* 411 U.S. 693, 710, 93 S.Ct. 1785, 1796, 36 L.Ed.2d 596

(1973), counties were similarly exempted from the scope of § 1983 jurisdiction. *See Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). · The ruling in *Moor* has been interpreted to include state governments, *see Monell v. Department of Social Services,* 532 F.2d 259, 262 (2d Cir. 1976, *cert. granted,* 429 U.S. 1071, 97 S.Ct. 807, 52 L.Ed.2d 789 (1977), and it is undisputed that departments or divisions of state, county or local governments are not "persons" for § 1983 purposes. *See Garrett v. City of Hamtramck,* 503 F.2d 1236, 1249 (6th Cir. 1974) (city planning commission not a person); *Cheramie v. Tucker,* 493 F.2d 586 (5th Cir.), *cert. denied,* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 (1974) (state department of highways not a person).

Applying these principles to the first two categories of defendants—the governmental units—the Town of Hempstead and the County of Nassau can not qualify as "persons" in a § 1983 action. *See Haber v. County of Nassau,* 411 F.Supp. 93 (E.D.N.Y.1976); *Walsh v. City of Long Beach,* 379 F.Supp. 954 (E.D.N.Y.1974). The outcome as to the state, county and local civil service commissions, however, is not as immediately clear. The plaintiffs contend that these agencies are autonomous organizations, and not really departments of municipal or state governments.[6]

There is "no rule of thumb that may be deemed controlling on the question whether independent agencies are to be considered 'persons' for the purposes of § 1983," *Monell v. Department of Social Services, supra,* at 263. Nonetheless, circumstances have been identified as relevant to whether an agency is a person under § 1983. Among them are

olations was dismissed in the state courts because of a purely technical defect in the complaint. To honor that technical dismissal would mean that no forum is available for redress of the alleged constitutional grievances. In view of these circumstances, and in view of the fact that the present complaint was never considered on its legal or factual merits by the state courts, *compare Mitchell v. NBC, supra,* in this case the policies underlying the civil rights statutes override those of 28 U.S.C. § 1738.

6. The plaintiffs have failed to assert a claim under 28 U.S.C. § 1331 and to allege a jurisdictional amount, which precludes a jurisdictional basis under § 1331 for the injunctive portion of the claim against the Town of Hempstead and the County of Nassau, *see Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 404, 91 S.Ct. 1999, 2008, 29 L.Ed.2d 619 (1971) (Harlan, J., concurring), and possibly the monetary claims for relief, *cf. City of Kenosha, Wisconsin v. Bruno,* 412 U.S. 507, 516, 93 S.Ct. 2222, 2228, 37 L.Ed.2d 109 (1973) (Brennan, J., concurring).

whether the agency's funds are appropriated by the state or municipality for its use as though it were a state or city department, *Monell, supra* at 264; whether the state or local government is liable for the debts of the agency, *Forman v. Community Services, Inc.,* 500 F.2d 1246, 1256 (2d Cir. 1974), *rev'd on other grds sub nom. United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); and whether the agency performs a function of government that serves the public interest, *see George R. Whitten Jr., Inc. v. State University Construction Fund,* 493 F.2d 177, 179 (1st Cir. 1974) (Moore, J.); *Sams v. New York State Board of Parole,* 352 F.Supp. 296, 299 (S.D.N.Y.1972).

The New York Civil Service Law governs the creation and administration of civil service agencies at the state and local level. The Governor of New York, with the advice and consent of the Senate, appoints the members of the State Civil Service Commission. N.Y. Civil Service Law § 5. The State Commission prescribes rules for classification of positions and administration of civil service examinations, and its president serves as the head of the State Department of Civil Service. N.Y. Civil Service Law § 7. Funds for many of the expenses of the administration of the Department of Civil Service are obtained from other public authorities, N.Y. Civil Service Law § 11, and the members of the State Commission are paid, apparently, from tax revenues. *See* N.Y. Civil Service Law § 5(2)(c).

Local civil service administration is governed by § 15 of the Civil Service Law, which creates in effect a civil service structure for counties and cities that parallels the state-wide system. A locality may opt for one of several forms of administration, and the administrators or officers are appointed by executives of the county or municipality. These commissioners are local officers whose responsibility is to the public. *Slavin v. McGuire,* 205 N.Y. 84, 98 N.E. 405 (1912).

■ In all aspects, the civil service commissions are an intimate part of the state, county and local governments. The commissions appear to depend on the governmental bodies for funds,[7] and thus the liabilities of the commissions are eventually the responsibilities of the government units. The executives of the commissions are appointed by public officials. Perhaps most significantly, the civil service commissions perform an essential function of government in New York, which is to "promote the good of public service." *Covelli v. Lugar,* 37 A.D.2d 1042, 1043, 326 N.Y.S.2d 87, 88 (3d Dep't 1971). *See People v. Kearny,* 164 N.Y. 64, 58 N.E. 14 (1900). Thus, for purposes of § 1983 jurisdiction, the civil service commissions named as defendants are simply departments of state, county and municipal governments and, therefore, can not be "persons" within the meaning of the statute.[8]

■ A different result is required with respect to the third and fourth categories of defendants, the public officials and political leaders and organizations. Municipal and state officials, if sued in either their individual or official capacities for injunctive relief are "persons" within the meaning of § 1983. *Monell, supra,* at 264; *Wright v. Chief of Transit Police,* 527 F.2d 1262, 1263 (2d Cir. 1976); *Rochester v. White,* 503 F.2d 263, 266 (3d Cir. 1974); *Gresham v. Chambers,* 501 F.2d 687, 690 (2d Cir. 1974); *Erdmann v. Stevens,* 458 F.2d 1205, 1208 (2d Cir.), *cert. denied,* 409 U.S. 889, 93 S.Ct. 126,

---

7. According to an affidavit submitted by the Deputy Town Attorney of Hempstead, Daniel P. McCarthy, the

salaries and operating expenses of the Town of Hempstead Civil Service Commission are completely funded by the municipality. Although the Civil Service Commission has the right to determine how the funds appropriated to it shall be spent, it has no final say in deciding what the appropriations shall be;

thus, the funds of the Commission are public funds appropriated for its use as if it were a department of Town government.
(McCarthy affidavit, at 4).

8. Since we find that the State Civil Service Commission is not a "person" under § 1983, there is no need to reach the eleventh amendment defense. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

34 L.Ed.2d 147 (1972). There is some controversy, however, as to whether there is jurisdiction over individuals named in their official capacities, when the lawsuit seeks money damages under § 1983. *Compare Monell, supra,* at 264–67 *with Muzquiz v. City of San Antonio,* 520 F.2d 993, 998–1001 (5th Cir. 1975), *aff'd on other grds en banc,* 528 F.2d 499 (5th Cir. 1976). While the plaintiffs in this case have not specified whether the public officials are sued in their individual or official capacities, the allegations of the complaint state a classic case of officials acting outside the scope of their offices and in an arbitrary manner. In such circumstances, damages against public officeholders are entirely, appropriate, since damages will be assessed against the individual and not against the municipal or state treasury. *See Scheuer v. Rhodes,* 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). Under this construction of the complaint, this court has jurisdiction over the named public officials in their individual capacities with respect to an award of money damages.

 Finally, there is the question of jurisdiction over a private political leader and a political organization. A private party who wilfully joins with a state official to violate another's constitutional rights can be liable under § 1983 even though he is not an official of the state. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *Sykes v. State of Cal. (Dept. of Motor Vehicles),* 497 F.2d 197, 200 n.2 (9th Cir. 1974); *Shirley v. State National Bank of Connecticut,* 493 F.2d 739, 741 (2d Cir.), *cert. denied,* 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974); *Gonzalez v. Shanker,* 399 F.Supp. 858, 868 (S.D.N.Y.1975); *Undergraduate Student Ass'n. v. Peltason,* 359 F.Supp. 320, 322 (N.D.Ill.1973). This principle has been applied without discussion even when the private party acting in concert with a state official is an organization. *E. g., Shirley v. State National Bank of Connecticut, supra; Timo v. Associated Indemnity Corp.,* 412 F.Supp. 1056 (W.D.Okl.1976); *Montanez v. Colegio de Tecnicos de Refrigeracion y Aire Acondicionado de Puerto Rico,* 343 F.Supp.

890 (D.P.R.1972). This appears to be a sound corollary to the "state action" doctrine, which allows an entirely private organization to be proceeded against for fourteenth amendment violations when its actions are authorized or sanctioned by state law. *See Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Since the complaint alleges a conspiracy involving state officials, and private political leaders and a political organization, this court has jurisdiction over both the alleged private individual conspirator and the Republican organization.

### 3. Class Status

The plaintiffs seek class status for their claim, asking to represent:

[A] class consisting of all persons in the County of Nassau whose positions in public office are governed by Article 5(6) of the Constitution of the State of New York and whose vacancies are filled by and whose promotions are filled by the New York State Civil Service Department, the appropriate municipal commissions, the Board of Supervisors of the appropriate community, or from Court Administration State of New York for employment in Nassau County.

The defendants object on a number of grounds, arguing, *inter alia,* that the class is not capable of concise or exact definition and that the plaintiffs are not the proper representatives for the class.

To qualify for class status, the plaintiffs must demonstrate, pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, that:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

If the requisites of Rule 23(a) are met, the plaintiffs must meet one of the three standards of Rule 23(b):

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[9]

*Rule 23(a)*

█ First, the claimed class, which includes 22,000 civil service employees in Nassau County, is of sufficient size to make joinder impractical.

█ Second, questions of "law or fact" exist common to the members of the class. The common issue is the alleged practice by public officials and political leaders in Nassau County of coercing political contributions from municipal and county employees. Obviously, if the existence of such a practice is established and held to be a violation

of § 1983, fact questions specific to each instance of the alleged coercion will remain. But this does not defeat a class action. Class status has been granted, for example, to a challenge to the relocation practices of an urban renewal project, despite the fact that each tenant received different treatment during relocation, *Norwalk CORE v. Norwalk Redevelopment Agency,* 395 F.2d 920 (2d Cir. 1968); to a lawsuit challenging odd-lot trading practices on the New York Stock Exchange although there were "varying fact patterns underlying each individual odd-lot transaction," *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968); to a securities action under 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, even though questions of reliance, knowledge and type of representations varied from investor to investor, *Esplin v. Hirschi,* 402 F.2d 94 (10th Cir. 1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); and to a Title VII action on behalf of black employees denied promotion, although it was "manifest that every decision to hire, fire or discharge an employee may involve individual considerations," *Senter v. General Motors Corp.,* 532 F.2d 511, 524 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). Here, the factual variations are not fatal since a common question exists involving the existence and legality of coercion of political contributions. *See Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir. 1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Like v. Carter,* 448 F.2d 798, 802 (8th Cir. 1971), *cert. denied,* 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972); *Bryan v. Amrep Corp.,* 429 F.Supp. 313 (S.D.N.Y. 1977); *Dolgow v. Anderson,* 43 F.R.D. 472 (E.D.N.Y.1968).

█ Third, the claims of the representative parties are typical of the claims of the class. Each member of the class reasonably could be expected to raise the same claim

---

**9.** Pertinent to a determination of class certifiability under 23(b)(3) are the following:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

and seek the same relief. The fact that some members of the class may prefer not to challenge the invasion of their rights does not mean the claims of the representatives are untypical:

> 'Typicalness' is not a subjective test, authorizing a judge to dismiss a class action based on a substantial legal claim where he thinks some members of the class may prefer to leave the violation of their rights unremedied.

3B *Moore's Federal Practice* ¶ 23.06–2, at 23–327 (1977), *citing Norwalk CORE v. Norwalk Redevelopment Agency, supra,* at 937; *Snyder v. Board of Trustees of Univ. of Ill.,* 286 F.Supp. 927, 931 (N.D.Ill.1968). *But see Ihrke v. Northern States Power Co.,* 459 F.2d 566 (8th Cir.), *vacated on other grounds,* 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972).

 Unlike the first three criteria of Rule 23(a), however, we are not satisfied as to the fourth requisite, that the named parties adequately represent the absentee members of the class. The requirement of adequate representation means both that interests of the named parties do not conflict with the interests of other members of the class and that "the party's attorneys be qualified, experienced and generally able to conduct the proposed litigation." *Eisen v. Carlisle & Jacquelin, supra,* at 562; see 3B *Moore's Federal Practice* ¶ 23.07[1] at 23–352 (1977); 7 Wright & Miller, *Federal Practice and Procedure* § 1765 (1972). *See generally* Degnan, *The Supreme Court of California 1970–1971, Foreword: Adequacy of Representation in Class Actions,* 60 Cal. L.Rev. 705 (1972). There is no problem as to a conflict of interest since the claims of the named parties are typical of those of the rest of the class. Rather, the difficulty lies in whether the attorney for the representative parties will adequately serve the interests of the absentee members. First, the attorney has not indicated his experience, if any, in civil rights litigation of this type. *See Carpenter v. Hall,* 311 F.Supp. 1099, 1112 (D.Tex.1970) (attorney for class must be experienced in the "type of litigation involved"). Second, and more important, there is substantial doubt as to wheth-

er an apparently single practitioner can effectively litigate an action that involves thousands of civil servants and the political practices of one of the most populated counties in the country.

The point is that by granting class status, the court places the attorney for the named parties in a ·position of public trust and responsibility, and in effect creates an attorney-client relationship between the absentee members and the attorney. But before this step is taken, the court, as the guardian of the interests of the class, must

> weigh, among other factors, the actual qualifications and experience of the self-selected champion for the proposed class. . . . Skilled representation may be crucial, for the outcome of a class suit—whether favorable or adverse to the class—is binding on the members of the class.

*Jeffery v. Malcolm,* 353 F.Supp. 395, 397 (S.D.N.Y.1973). *See Weis v. Tenney Corp.,* 47 F.R.D. 283, 290 (S.D.N.Y.1969); *Cannon v. Texas Gulf Sulphur Co.,* 47 F.R.D. 60, 63–64 (S.D.N.Y.1969). In several instances, courts have appointed counsel to represent the absentee members, while allowing the original attorney to represent the named parties, because the increased scope of the action required additional counsel. *E. g., Armstrong v. O'Connell,* 416 F.Supp. 1325, 1340–42 (E.D.Wis.1976); *Amos v. Board of School Directors of City of Milwaukee,* 408 F.Supp. 765, 775 (E.D.Wis.), *aff'd, Armstrong v. Brennan,* 539 F.2d 625 (7th Cir. 1976). *See Gonzales v. Cassidy,* 474 F.2d 67, 75–76 (5th Cir. 1973).

 Here, rather than make this determination on the papers, both the attorney and the named plaintiffs should be afforded a hearing on the adequacy of representation. Therefore, we find that the requirements of Rule 23(a) have been met, subject to this court's designation of the present or another attorney to represent the absentee members.

### Rule 23(b)

The next inquiry is whether any of the three categories of Rule 23(b) embrace this

suit. Certainly, Rule 23(b)(2) certification is appropriate here, since the defendants allegedly have acted "on grounds generally applicable to the class"—*i. e.*, requiring political contributions from civil service employees—and the named plaintiffs are seeking final injunctive relief. The named plaintiffs, of course, also ask for monetary damages and therefore the suit must fit either 23(b)(1) or (b)(3). Since we find that the class action can be certified under 23(b)(1) it is unnecessary to certify the class action under 23(b)(3). *See* 3B *Moore's Federal Practice* ¶ 23.31[1] *et seq.* (1977).

Rule 23(b)(1) authorizes "the use of the class action device when necessary to prevent possible adverse effects, either on the parties opposing the class or on absent class members, that might result if separate actions had to be brought." 7A Wright & Miller, *Federal Practice and Procedure* § 1772, at 4 (1972). The applicable subprovision of 23(b)(1) is 23(b)(1)(A), which allows class suits if individual litigation would create the possibility of inconsistent adjudications that would establish "incompatible standards of conduct for the party opposing the class."

At the outset, there is an unavoidable overlap among the three categories of Rule 23(b). An action certifiable under (b)(1) and (b)(2) is considered to qualify for (b)(3) treatment as well, *Van Gemert v. Boeing Co.*, 259 F.Supp. 125, 130 (S.D.N.Y.1966), although a (b)(3) action will not necessarily satisfy the requisites of the other two categories. In certifying an action under 23(b)(1) or (b)(2), moreover, the court denies members of the class the "opt-out" provision of 23(c)(2) [10] and allows for more flexible notice requirements. *See Eisen v. Carlisle & Jacquelin, supra,* at 564–65; *United States v. Allegheny-Ludlum Indus., Inc.,* 517 F.2d 826, 878–89 (5th Cir. 1975), *cert.*

*denied,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); *La Chapelle v. Owens-Illinois, Inc.,* 513 F.2d 286, 288 n. 7 (5th Cir. 1975). Thus, in certifying an action under (b)(1) and (b)(2) the court must be satisfied that circumstances exist that make a (b)(1) action more appropriate than one under (b)(3). Otherwise, (b)(3) would be rendered superfluous. Indeed, one court has gone so far as to suggest that a (b)(1) action is proper only where there is a complete absence of individual issues. *Tober v. Charnita,* 58 F.R.D. 74, 81 (M.D.Pa.1973).

In this case, the existence of individual issues does not defeat (b)(1) and (b)(2) certification. This litigation challenges an alleged political practice affecting every municipal employee in Nassau County. In fact, drawing reasonable inferences from the complaint, *Senter v. General Motors Corp., supra,* at 523, what is alleged here is a practice so well institutionalized in Nassau County politics that its legitimacy and legality are not questioned by either most of the employees who contribute or those who require and receive the contributions. There is a substantial risk that if the question of what is permissible political activity in Nassau County is litigated in several forums, inconsistent adjudications would result. One court might find a violation of the civil rights statutes while another might not. Two courts might find that the civil rights of the plaintiffs had been violated, but differ on whether injunctive relief was appropriate. · *See Robertson v. National Basketball Ass'n,* 389 F.Supp. 867, 901 (S.D. N.Y.1975), *aff'd,* 556 F.2d 682 (2d Cir. 1977).

Of course, inconsistent adjudications do not automatically mean that the party opposing the class will be subjected to incompatible standards of conduct. For example, in *McDonnell Douglas Corp. v. United*

---

**10.** Rule 23(c)(2) provides:

In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will

exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

*States District Court for the Central District of California,* 523 F.2d 1083 (9th Cir. 1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976), involving a mass tort action arising from an airplane crash, the district court certified a (b)(1)(A) action because, if separate actions were maintained, the defendants might be liable to some defendants, but not to others. The circuit court vacated the certification, interpreting the "incompatible standards of conduct" requirement of (b)(1)(A) to be "incompatible standards of conduct required of the defendant in fulfilling judgments in separate actions." *Id.* at 1086. Thus, the defendant would only have to pay judgments in some cases and not in others, a situation that hardly called for inconsistent conduct.

■ In this case, the plaintiffs do not seek merely a declaration of liability for past acts. Rather, they seek to alter, by injunctive relief and monetary compensation, an alleged on-going course of conduct. The alleged conduct is either legal, or it is illegal, as to all members of the class, and the defendants must act or be allowed to act in the same way as to all members of the class. *See Zachary v. Chase Manhattan Bank,* 52 F.R.D. 532 (S.D.N.Y.1971). Viewed in this light, multiple litigation creates a very real risk that the defendants will be held to incompatible standards of conduct, and therefore this action is entitled to class certification under 23(b)(1)(A).[11]

■ The defendants also oppose class status on the ground that the class is imprecisely defined. One of the oft-cited virtues of Rule 23 is the flexibility it gives a court in shaping the class litigation. *See generally* Becker, *The Class Action Conflict: A 1977 Report.* At this early stage of the litigation, it is sufficient to tentatively certify the class as

former and present employees of Nassau County or its municipalities, or applicants for positions with these government units, who, in order to obtain a position or promotion, were required by the defendants to make financial contributions to the Nassau County Republican Committee, or affiliated organization and individuals.

Hopefully, as the litigation proceeds, the outlines of the class and possible sub-classes will be more sharply defined.[12]

Accordingly, for the reasons stated above, we make the following disposition:

1. The motions to dismiss by the Town of Hempstead, the County of Nassau, the New York State Civil Service Commission, the Nassau County Civil Service Commission, and the Town of Hempstead Civil Service Commission, are granted. All other motions to dismiss are denied.

11. In this case, unlike others where 23(b)(1) certification has been denied, *e. g., Berlin Democratic Club v. Rumsfeld,* 410 F.Supp. 144 (D.D.C.1976), multiple lawsuits are quite likely. In fact, within the last year and a half two lawsuits have been docketed in this court presenting allegations similar to those of the present complaint. *E. g., Scutari v. Ruggiero,* 77 C 883; *Clark v. Margiotta,* 75 C 1722. *See also Kowalski v. Caso,* 76 C 902 (E.D.N.Y. Dec. 6, 1976) (Neaher, J.).

12. The remaining objections made by defendants to class certification are without merit. The defendants Republican Committee and Margiotta argue that other organizations represent the civil service employees and that "[i]f, in fact, there was a necessity for a class action such as this, it is obvious that these organizations would have commenced same." The simple answer to this argument is that Rule 23 allows any member of a class of aggrieved individuals to act as a representative provided he meets the requirements of the rule, and nothing in that rule either requires an official organization, which might represent the interests of members of the class in other matters, to join in the class litigation, or suggests that its failure to do so is a relevant factor in certifying a class.

The County of Nassau, joined by several of the other defendants, contends that State Supreme Court Justice Albert denied class status to plaintiffs in the state courts, and that his determination is *res judicata* of the present motion for class certification. The answer to this argument is that Justice Albert never decided the class motion, stating as he did that, because the complaint had been dismissed under CPLR 3211(e), and reargument denied, it was "unnecessary" to decide the class question. The comments that followed can only be considered dicta, and not a final adjudication. *See Cullen v. Margiotta,* No. 74–19518 (Sup.Ct. Nov. 15, 1976).

2. The plaintiffs' motion for class status is granted, pursuant to Rule 23(a) and (b)(1)(A) and (b)(2), subject to this court's designation of an attorney for the absentee members of the class. A hearing on the question of the designation of an attorney will be held on July 15, 1977, at 2:00 P.M. o'clock, in courtroom 5. It is

SO ORDERED.

## SUPPLEMENTAL OPINION

On July 15, 1977, this court entered an order appointing counsel for the absentee members of the class in this matter, directed the plaintiffs to file an amended complaint within thirty days, and stayed all motions to reargue the decision and order of June 27, 1977, until the amended complaint is served on the defendants. This memorandum of decision is intended to supplement the order of July 15, which was entered from the bench.

█ In certifying this litigation as a class action, we expressed reservations about the adequacy of representation of the absentee members of the class. The named plaintiffs' attorney was afforded a hearing on the question of whether he could effectively represent the interests of the entire class. The attorney, whose competence we do not question, nonetheless failed to demonstrate that he has experience in the specialized field of federal civil rights litigation or that he has access to the substantial resources necessary to support what promises to be costly and protracted litigation. Thus, while the present attorney might effectively represent the interests of the named plaintiffs, the expansion of the litigation to a class action, one that may define the rights of thousands of government employees in Nassau County, requires the appointment of additional counsel to represent the absentee members of the class.

In *Amos v. Board of School Directors of City of Milwaukee*, 408 F.Supp. 765 (E.D. Wis.), aff'd *Armstrong v. Brennan*, 539 F.2d 625 (7th Cir. 1976), a school desegregation case, the court certified the action as a class action and appointed counsel to represent the classes of absentee plaintiffs. The dis-trict court expressed concern that "the interests of the two alleged classes cannot be fully and adequately represented in future proceedings by a single practitioner . . . ." *Id.* at 774. It also found that, although there was no precedent for appointment of counsel in this manner,

> indirect authority provides substantial support for this procedure. The appointment of class counsel other than the lawyer for the representative parties bringing the suit may well be necessary whenever the device of a subclass is used. *Brandt v. Owens-Illinois, Inc.*, 62 F.R.D. 160, 171 (S.D.N.Y.1974). In situations where counsel for the representative party is unable, either personally or through his firm, to provide the requisite legal services (as, for example, where simultaneous depositions are scheduled at various locations throughout the country), the Manual for Complex Litigation recognizes that the interests of the class may be best served by the employment of additional counsel. 1 Moore's Federal Practice, Part 2, § 1.44, at 40–41 (2d ed. 1975). Finally, Rule 23 itself, in subsection (d) thereof, provides that absent members of the class may intervene with counsel of their own and, more generally, constitutes recognition of the Court's residual power to issue orders in conduct of actions to which the rule applies.

*Id.* at 775.

█ There are several additional considerations, present in this case, that provide support for appointment of counsel in a class action. Initially, it is worth pointing out that Rule 23(d)(3) allows the court to impose "conditions on the representative parties or on intervenors." The Advisory Committee Notes comment that "[s]ubdivision (d)(3) reflects the possibility of conditioning the maintenance of a class action, e. g., on the strengthening of the representation, see subdivision (c)(1) above . . . ." Notes of the Advisory Committee, 28 U.S.C., Rule 23, Fed.R.Civ.P. Implicitly, the court has a responsibility to assure adequate representation before certifying a class, but rather than simply refuse to certi-

fy on the ground of inadequacy of representation, it may condition certification on the appointment of additional counsel. Rule 23(d) thus appears designed to assure that otherwise valid class actions are not denied certification because the attorney chosen by the named plaintiff lacks, for example, the resources for the expanded litigation.

The flexible approach of Rule 23 to representation is particularly significant where an action that seeks to vindicate a fundamental right, such as the right to free association, is certified under Rule 23(b)(1) and (b)(2). First, there is a strong public interest in vindicating and protecting first amendment rights. If all requisites to class certification are met, other than adequacy of representation, the purpose of Rule 23, which provides a mechanism to efficiently litigate questions of common interest such as those presented here, would be defeated if the court is allowed the option only of refusing to certify a class. Second, such a restrictive interpretation of the discretion of a court under Rule 23 is inconsistent with the specific purpose underlying the certification of a class under (b)(1) or (b)(2). As pointed out in our earlier opinion, Rule 23(b)(1) certification is appropriate, if not required, when there is a risk that multiple litigation would establish "incompatible standards of conduct for the party opposing the class". A finding that an action qualifies for (b)(1) treatment signifies the desirability of adjudicating in a single action the rights of both the class and the defendants. Since Rule 23(b)(1) requires the court to certify a class to avoid inconsistent adjudications, it follows that the court must be allowed to cure the problem of ineffective representation of a (b)(1) action by appointment of additional counsel. Otherwise, denial of class certification to an action that in all other respects qualifies as a (b)(1) action creates precisely the risk of multiple, inconsistent adjudications that Rule 23(b)(1) is designed to avoid, a risk that is both unnecessary and avoidable when the one obstacle to class status can be overcome by the simple expedient of appointing additional counsel.

Here, after soliciting and receiving suggestions for appointment from the named plaintiffs' attorney, the Federal Bar Council and the Federal Courts Committee of the Association of the Bar of the City of New York, we appointed Mr. Burt Neuborne to represent the absentee members of the class. Mr. Neuborne is a Professor of Law at New York University School of Law, where he teaches courses involving the federal courts and federal civil procedure and constitutional litigation. As former assistant legal director of the American Civil Liberties Union and former staff counsel to the New York Civil Liberties Union, he has an extensive background in federal civil rights litigation. He has access to the resources of both student law clinics and the Civil Liberties Union. There is no question that, in conjunction with the named plaintiffs' attorney, he will ably and effectively represent the interests of the class.